# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

m 98-20519
_____

MARTIN'S HEREND IMPORTS, INC.,
and
HERENDI PORCELANGYAR,

Plaintiffs-Appellees,

VERSUS

DIAMOND & GEM TRADING UNITED STATES OF AMERICA COMPANY,
JUDITH JUHASZ, and FRANK JUHASZ,

Defendants-Appellants,

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

_____

m 98-20892
_____

MARTIN'S HEREND IMPORTS, INC.,
and
HERENDI PORCELANGYAR,

Plaintiffs-Counter-Defendants-
Appellees,

VERSUS

DIAMOND & GEM TRADING UNITED STATES OF AMERICA COMPANY,
JUDITH JUHASZ, and FRANK JUHASZ,

Defendants-Counter-Claimants-

Appellants,

LOWELL T. CAGE, Trustee,

Intervenor Defendant-
Appellant.

————————————————

Appeals from the United States District Court
for the Southern District of Texas

————————————————

November 9, 1999

Before GARWOOD, SMITH, and
BENAVIDES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

These consolidated appeals involve a trademark infringement dispute and a counterclaim for alleged wrongful seizure. Judith and Frank Juhasz and their proprietorship, Diamond & Gem Trading United States of America Company (collectively "Diamond & Gem"), appeal (1) the denial of their motion to amend and clarify the effect of a permanent injunction entered against them in the trademark dispute; (2) a partial summary judgment in favor of Martin's Herend Imports, Inc. ("Martin's"), and Herendi Porcelangyar ("Herendi") that Martin's lacked bad faith in obtaining a seizure order for Diamond & Gem's goods; (3) a jury instruction that Diamond & Gem had the burden of proof on its wrongful seizure counterclaim; and (4) an order, given on remand after a prior appeal, limiting Diamond & Gem to the witnesses, issues, and discovery it had offered at the first trial. We affirm in part, reverse in part, and remand.

I.

This matter began with a dispute over the import and sale of high-end porcelain products manufactured by Herendi, a Hungarian company that owns a federally registered trademark that consists of the hand-painted "Herend" name and design. Martin's is a U.S. corporation that owns the exclusive right to import Herendi's products into the United States. Frank and Judith Juhasz owned and operated Diamond & Gem, a Houston proprietorship that sold, among other things, porcelain pieces bearing the Herend trademark. Diamond & Gem acquired the pieces from American and foreign sources, including Herendi's stores in Hungary, and sold them in the United States. Among the Herend pieces Diamond & Gem sold were pieces that Martin's did not offer for sale in the United States.

II.

Martin's sued Diamond & Gem, alleging, *inter alia*, trademark infringement, and

2

obtained an *ex parte* temporary restraining order against Diamond & Gem and a seizure order based, in part, on affidavit evidence that Diamond & Gem had sold counterfeit Herend porcelain goods. Counsel for Martin's, along with U.S. marshals, seized porcelain pieces and records from Diamond & Gem's business premises.

Diamond & Gem counterclaimed, alleging that the seizure was wrongful. Following the presentation of Martin's's evidence, the court granted summary judgment for Martin's on the wrongful seizure counterclaim. The jury then returned a verdict in favor of Martin's for $685,000 on the trademark infringement claim, and the court entered final judgment and a permanent injunction against Diamond & Gem and later entered a contempt order against Diamond & Gem for violating the terms of the injunction.

After entry of final judgment, Diamond & Gem filed for bankruptcy protection under chapter 7. The bankruptcy case is still pending, but Lowell Cage, Trustee for Diamond & Gem and intervenor-defendant, has also appealed the adverse judgment on the wrongful seizure counterclaim. Diamond & Gem appealed, and we affirmed the judgment and damage award but found the injunction too broad and remanded with instructions to amend it. We also reversed the summary judgment on the wrongful seizure counterclaim. *See Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1307-08 (5th Cir. 1997) ("*Martin's I*").

On remand, the district court asked the parties which issues they felt still needed to be resolved. Diamond & Gem identified for retrial the wrongful seizure counterclaim and the language of the "over broad" injunction. De-

spite failing to request additional discovery at that time, Diamond & Gem subsequently made numerous attempts to introduce new evidence, which the court denied.

Diamond & Gem moved for leave to file a First Amended Counterclaim to seek declaratory relief with respect to the scope of the injunction. The court denied the motion, then entered the Amended Permanent Injunction; Diamond & Gem appealed that and filed an unsuccessful petition for writ of mandamus.

Martin's filed a motion for partial summary, judgment alleging that it had not acted in bad faith as a matter of law at the *ex parte* hearing to obtain the seizure of Diamond & Gem's merchandise. The court granted the summary judgment motion on the issue of bad faith and held that Diamond & Gem was not entitled to summary judgment establishing the scope of the injunction based on its denied First Amended Counterclaim and that Diamond & Gem could not introduce any new evidence.

The wrongful seizure case went to the jury, which found in favor of Martin's. The court entered final judgment incorporating the verdict, and Diamond & Gem appealed. We consolidated Diamond & Gem's two appeals.

III.

Diamond & Gem appeals the denial of the motion for leave to amend to request a declaratory judgment that "all Herend porcelain found in the United States is presumed to have been adopted by Herend." Diamond & Gem also contends that the district court erred in its modification of the permanent injunction to comply with *Martin's I*.

## A.

As an initial matter, we must consider whether we have jurisdiction to hear an immediate appeal of the injunction. Under § 1292(a)(1), the modification of an injunction is "independently appealable." *See Western Water Man v. Brown*, 40 F.3d 105, 108 n.1 (5th Cir. 1995). And if we have jurisdiction over the modification of the injunction, we also may review the denial of Diamond & Gem's motion to amend and clarify the effect of the injunction. *See id.*[1]

For us to have jurisdiction over this interlocutory appeal, the district court's order must "modify" the earlier order, not merely "interpret" it. *See In re Ingram Towing Co.*, 59 F.3d 513, 516 (5th Cir. 1995). The line between modification and interpretation is a functional one, and the dispositive issue is whether "the ruling appealed from can fairly be said to have changed the underlying decree in a jurisdictionally significant way." *See Sierra Club v. Marsh*, 907 F.2d 210, 212 (1st Cir. 1990).

This is unlike the circumstance in *Ingram Towing*, in which we lacked jurisdiction because the district court had only "explained" the coverage of the earlier injunction. *See Ingram Towing*, 59 F.3d at 516. Here, the district court altered the language of the injunction to "relax its prohibitions" against Diamond & Gem. *See Sierra Club*, 907 F.2d at 212. Specifically, the court attempted to follow this court's mandate to limit the injunction's reach to prohibit Diamond & Gem

---

[1] *See also Mercury Motor Express, Inc. v. Brinke*, 475 F.2d 1086, 1091 (5th Cir. 1973) (holding that court with interlocutory jurisdiction over an injunctive order pursuant to § 1292(a)(1) may decide other aspects of the order).

from selling only those goods that Martin's has ever approved for importation and sale in this country. Thus, the injunction is sufficiently altered to satisfy § 1292(a)(1).

Martin's objects to our jurisdiction under § 1292(a)(1) by seeking to draw a distinction between permanent and preliminary injunctions, arguing that only the latter are subject to interlocutory appeal. But neither § 1292(a)(1) nor Fifth Circuit precedent draws any distinction between preliminary and permanent injunctions in this regard.

In *Association of Co-Operative Members, Inc. v. Farmland Indus., Inc.*, 684 F.2d 1134 (5th Cir. 1982), we held that jurisdiction was proper and noted that § 1292(a)(1), "on its face," provided jurisdiction over the issuance of a permanent injunction. *See id.* at 1137-38. Thus, we properly have jurisdiction under § 1292(a)(1).

## B.

Before the district court ruled on Diamond & Gem's motion to amend and clarify the injunction, Diamond & Gem filed a second motion for partial summary judgment, seeking to have the court find, as a matter of law, that all Herend porcelain manufactured by the Herendi factory had been approved by Martin's or Herendi, or both, for importation into and sale in the United States. In support of this motion, Diamond & Gem sought to introduce declarations by Frank Juhasz and Edwin Pound, a sales representative who had worked with Martin's for about thirteen years.

According to Diamond & Gem, Pound's testimony "suggests that all of the porcelain manufactured by the [Herendi] factory over time has been approved for importation and sale in the United States" and also supports

Diamond & Gem's theory, during the first trial, that anything Diamond & Gem, a retailer in a secondary market, purchased in the United States "should be presumed" to have come from Martin's. The district court denied the motion to amend.

We review denials of leave to amend for abuse of discretion. *See Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981). In the context of motions to amend pleadings, "discretion" may be misleading, because FED. R. CIV. P. 15(a) "evinces a bias in favor of granting leave to amend." *Id.* Indeed, "unless there is a substantial reason," such as undue delay, bad faith, dilatory motive, or undue prejudice to the opposing party, "the discretion of the district court is not broad enough to permit denial." *Id.* at 598 (citing *Lone Star Motor Import v. Citroen Cars*, 288 F.2d 69, 75 (5th Cir. 1961)).[2]

The problem with Diamond & Gem's motion to amend, however, is that through the guise of clarifying the scope of the injunction, Diamond & Gem seeks to go far beyond the command of *Martin's I*. There, we held that Diamond & Gem would be "allowed to sell any Herend piece offered in a Martin's catalogue" and would be "free to sell any individual piece of the same quality from the same product line" if Martin's "ever approved a piece for importation and sale in this country." *See Martin's I*, 112 F.3d at 1308. In its amended counterclaim, Diamond & Gem offers a much more expansive reading,

asserting that "all Herend porcelain found in the United States is presumed to have been approved."

Diamond & Gem is merely attempting to argue the same theory that failed in the earlier trademark infringement disputeSSthat it did not in fact infringe so long as it sold goods bought in the United States. And Diamond & Gem seeks to introduce new evidence to support this theory. But given that this is an impermissible attempt to relitigate which type of Herend pieces Diamond & Gem can permissibly sell, the court did not abuse its discretion in denying the motion to amend.

In *Martin's I*, we agreed that Martin's was entitled to injunctive relief, and, accordingly, we affirmed the summary judgment in favor of Martin's's trademark infringement claim. *See id.* at 1299. The "law of the case" doctrine counsels that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Schiro v. Farley*, 510 U.S. 222, 232 (1994).[3] This is a new appeal, but the same case; accordingly, Diamond & Gem is precluded from offering new evidence on issues already decided and affirmed.

A district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.[4] Thus, because Diamond &

---

[2] *See also Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 320 (5th Cir. 1991) (observing that while leave to amend is freely given, it is not automatic, and denial is proper if based on sufficient circumstances, such as untimeliness and futility).

[3] *Accord Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1423 (5th Cir. 1995) (observing that a final judgment on certain issues should continue to govern those issues at later stages of the case).

[4] *See Jamieson v. Shaw*, 772 F.2d 1205, 1209-11 (5th Cir. 1985) (observing that amendments are futile if the theory presented lacks legal foundation or was presented in prior version of (continued...)

Gem could not relitigate the issues decided in *Martin's I*, the court did not abuse its discretion in denying the motion to amend. This is so notwithstanding that the court did not explain the reasons for its denial.[5]

### C.

Diamond & Gem contends that the district court erred in its modification of the injunction to conform to *Martin's I*. The relevant portion of the modified injunction reads:

[Diamond & Gem is enjoined from] distributing, advertising or selling in the United States products which are physically different from but which bear the same federally registered trademark No. 1,816,915 as genuine Herend products which have ever been sold by the Plaintiffs (or either them) in the United States or which are of the same quality from the same product line as those genuine Herend products which have ever been sold by the plaintiffs or either of them in the United States.

Diamond & Gem points to several deficiencies and inaccuracies in the injunction. First, it complains that the modified injunction uses the term "physically different" ambiguously, and that such broad language can lead to imprecise interpretations of which products it is prohibited from selling. Martin's responds that "physically different" becomes something of a term of art for purposes of this dispute.

While injunctions should be specific, the command for specificity is not absolute; it merely requires injunctions to be "framed so that those enjoined will know what conduct the court has prohibited." *Meyer v. Brown & Root Constr. Co.*, 661 F.2d 369, 373 (5th Cir. 1981). "The mere fact that . . . interpretation is necessary does not render the injunction so vague and ambiguous that a party cannot know what is expected of him." *United States v. Greyhound Corp.*, 508 F.2d 529, 536 (7th Cir. 1974).

This approach seems reasonable. It is enough that the phrase "physically different" will be understood by both parties in the context of the many procedural skirmishes in the life of this case and in the context of *Martin's I*.

The other deficiencies, however, are more problematic. Diamond & Gem complains of the omission of a crucial "not" that should have been inserted before "of the same quality." Next, it argues that the injunction contains a confusing string of "which" clauses that fail to specify the type of products (prohibited or allowed) that each clause concerns. Moreover, Diamond & Gem points to the injunction's failure to mention pieces imported into the United States before 1957, which, by the terms of *Martin's I*, Diamond & Gem may sell.[6]

Finally, Diamond & Gem challenges the injunction's language that allows Diamond & Gem to sell Herend products that are of the

---

[4](...continued)
complaint).

[5] *See Ashe v. Corley*, 992 F.2d 540, 542 (5th Cir. 1993) (finding district court's failure to set out its reasons for denial unfortunate but not fatal when the reasons are ample and obvious).

[6] *See Martin's*, 112 F.3d at 1304 ("[T]he injunction should be modified to allow the sale of Herend pieces which were imported to this country before Martin's became Herendi's exclusive distributor in 1957.").

same quality as the products "which have ever been *sold*" by Martin's. Diamond & Gem asserts that this language is not consistent with *Martin's I,* in which we stated that Diamond & Gem could sell any pieces "ever *approved . . .* for importation and sale in this country," including "any Herend piece offered in a Martin's catalogue." *Id.* (emphasis added).

"An order granting or denying a preliminary injunction will be reversed only upon a showing that the district court abused its discretion," but "legal determinations are subject to plenary review on appeal." *Lakedreams v. Taylor*, 932 F.2d 1103, 1007 (5th Cir. 1991). Because in *Martin's I* we articulated a legal standard for when products sold by Diamond & Gem would be held to infringe Martin's's trademark rights, the portions of the amended permanent injunction that speak to those standards should be reviewed *de novo* to ensure that they are consistent with *Martin's I*. We conclude that they are not fully consistent.

Diamond & Gem correctly observes that "not" needs to be inserted before "of the same quality" and that the injunction should permit Diamond & Gem to sell pieces imported into this country before 1957. Moreover, because the injunction requires that the products must have actually been "sold"SSrather than merely "approved" or "offered in a Martin's catalogue"SSit places an improper limit on those products that Diamond & Gem can permissibly sell.

We also observe that the critical part of the modified injunction proscribes Diamond & Gem from involvement with the subject products that have ever been sold in the United States "or which are of the same quality from the same product line . . . ." This wording is more restrictive than what is required by *Martin's I*. The injunction should read "and are of the same quality" instead of "or which are of the same quality." As a result of the discrepancies we have noted, we remand for the district court to modify the injunction.

IV.

After remand, Diamond & Gem reasserted its wrongful seizure counterclaim against Martin's. Martin's moved for partial summary judgment to establish, *inter alia*, that when it obtained the *ex parte* order for the seizure, it did not act in bad faith as a matter of law. The district court granted the motion, and Diamond & Gem appeals.

We review summary judgments *de novo*, using the same standard employed by the district court.[7] Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[8] We view all factual issues in the light most favorable to the non-moving party. *See Chide*, 974 F.2d at 656.

The wrongful seizure counterclaim asserted by Diamond & Gem is predicated on 15 U.S.C. § 1116(d), which provides for the recovery of damages caused by a wrongful seizure and permits recovery of punitive damages "in instances where the seizure was sought in bad faith." The legislative history of the Lanham Act establishes that a seizure can

---

[7] *See*, *e.g.*, *Williams v. Scott*, 35 F.3d 159, 161 (5th Cir. 1994); *Thompson v. Georgia Pac. Corp.*, 993 F.3d 1166, 1167-69 (5th Cir. 1993).

[8] *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *King v. Chide*, 974 F.2d 653, 656 (5th Cir. 1992).

be wrongful if brought "in bad faith."[9] A seizure can be wrongful also if the items seized are predominantly legitimate.[10] Martin's sought summary judgment only on the bad faith issue, which relates to both the wrongful seizure counterclaim and the punitive damages claim. It did not seek summary judgment on whether any non-infringing merchandise was seized (though the jury subsequently found that the seizure was not wrongful).

Diamond & Gem contends that the court erred in granting summary judgment by applying the wrong legal standard and ignoring "numerous fact issues." These arguments are without merit.

First, Diamond & Gem contends that the standard for bad faith is an objective one that can be evinced by "anticompetitive motive" coupled with "knowing lack of need for a seizure." Despite Diamond & Gem's assertions, there is not such a large gulf between the standard it enunciates and the one used by the district court: namely, whether Martin's sought the seizure knowing it was baseless.[11] The district court also noted that a good faith belief that an operation is selling counterfeit goods need not even be true: "[A] plaintiff need not have conclusive proof that the defendant has intentionally trafficked in known counterfeits in order to file a suit." S. REP. NO. 98-526, at 19. Accordingly, the court used the right standard for finding bad faith.

Diamond & Gem's second criticism is the district court's alleged failure to consider multiple fact issues that might rebut a finding of no bad faith. Material facts sufficient to overcome summary judgment are those that affect the outcome of litigation. *See Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980). Once a summary judgment motion is made, "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response . . . must set forth specific facts showing the there is a genuine issue for trial." FED. R. CIV. P. 56(e).

Diamond & Gem has presented no material fact, or anything rising above the level of bare accusation, that Martin's acted in bad faith. Although Diamond & Gem spends considerable time developing its theory that Martin's sought the seizure in retaliation for an earlier dispute over counterfeiting, there is not a single fact that tends to show Martin's obtained the seizure order with knowledge that it was baseless.

In addition, much of the evidence Diamond & Gem points to as establishing an issue of material fact was not even submitted in opposition to the summary judgment motion. As a result, this evidence, even assuming it could raise a genuine issue of material fact as to Martin's bad faith, is irrelevant. When we consider an appeal of a summary judgment, "our review is confined to an examination of materials before the lower court at the time the ruling was made; subsequent materials are

---

[9] *See* Senate Comm. on the Judiciary, S. REP. NO. 98-526, at 8 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3627, 3634.

[10] *See id.* at 16 ("[T]he mere fact that a few non-counterfeit items may have been seized does not make the seizure as a whole wrongful.").

[11] *See* S. REP. NO. 98-526, at 19 ("Should a plaintiff plead or pursue a suit when it is clear that the suit is baseless, however, this provision would make the plaintiff liable in damages to the victimized defendant.").

irrelevant."[12]

Diamond & Gem also criticizes the decision to authorize seizure in the first place, but as Martin's points out, the sole issue is whether Martin's may have acted in bad faith, not a second-guessing of the seizure. Martin's, on the other hand, reproduces testimony from various company officials articulating their belief that Diamond & Gem was selling counterfeit Herend porcelain.

At the *ex parte* hearing, Martin's presented a legal memorandum in support of its request for the seizure; the memorandum included the reasons for suspecting Diamond & Gem of counterfeiting.[13] The district court found no evidence by Diamond & Gem to rebut the showing by Martin's that it did not act in bad faith, and the record reveals none either. For these reasons, the court was correct in granting summary judgment in favor of Martin's on the issue of bad faith.

V.

Diamond & Gem contends that the court erred in its instruction to the jury that it, not Martin's, had the burden of proof on Diamond & Gem's wrongful seizure counterclaim. In support of this contention, Diamond & Gem argues (1) that *Martin's I* conclusively found that Diamond & Gem had not sold any

counterfeit goods; (2) that the "regular, established" nature of the business required this burden shifting; and (3) that 15 U.S.C. § 1116(d)(4)(B) also requires shifting the burden to Martin's to disprove Diamond & Gem's "innocence." We disagree.

We review jury instructions for harmful error. Even if an instruction erroneously states the applicable law or provides insufficient guidance, we will not disturb the judgment unless the error could have affected the outcome of the trial. *See Arleth v. Freeport-McMoran Oil & Gas Co.*, 2 F.3d 630, 634 (5th Cir. 1993); *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 377 (5th Cir. 1989).

The district court correctly stated the law. Diamond & Gem filed its counterclaim alleging that Martin's conducted a wrongful seizure of its inventory. Accordingly, Diamond & Gem has the burden of establishing all the elements of its claim. *See, e.g., Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 992 (5th Cir. 1996) (en banc) (holding that plaintiff had the burden of proof to establish her *prima facie* case). That burden requires that Diamond & Gem establish that the seizure was in fact wrongful.

None of the reasons cited by Diamond & Gem demonstrates that Martin's should have borne the proof to disprove Diamond & Gem's counterclaim. First, *Martin's I* did not establish that the seizure was wrongful or that the goods seized were all authentic. Instead, this court held only that at the first trial Martin's had not met its burden to prevail on summary judgment that the seizure was lawful. Second, the fact that Diamond & Gem was an "established, regular business" does not shift the burden at trial on a wrongful seizure counterclaim. The status of a business as "established" and "regular" is relevant only as a fac-

---

[12] *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988); *Ingalls Iron Works Co. v. Freuhauf Corp.*, 518 F.2d 966, 967 (5th Cir. 1975).

[13] As Martin's points out, at least one court has found this kind of showing sufficient to negate claims of bad faith when seeking a seizure order. *See General Elec. Co. v. Speicher*, 676 F. Supp. 1421, 1434 (N.D. Ind. 1988), *rev'd on other grounds*, 877 F.2d 531, 538 (7th Cir. 1989).

tor in determining whether a seizure order should be issued at all.[14]

The statute does not in any way, directly or indirectly, shift the burden of proof for a wrongful counterclaim. The wrongful seizure provision of the Lanham Act is not in § 1116(d)(4) but in § 1116(d)(11). Thus, § 1116(d)(11) and its supporting legislative history establish the standards by which wrongful seizure claims may be pursued, and § 1116(d)(4) has nothing to do with those standards.

Second, § 1116(d)(11) says nothing about the burden of proof and thus gives no indication that we should abandon the general rule that the party asserting a claim carries the burden of proof. Third, § 1116(d)(11) does not mention or refer to § 1116(d)(4) or give any indication that any of § 1116(d)(4)'s provisions were meant to govern, or even be relevant to, § 1116(d)(11).

Fourth, § 1116(d)(4) on its face describes only the findings a district court must make before it enters a seizure order. It thus is up to the district court, not defendants, to determine whether the evidence supports entry of those findings. The court made such findings here and confirmed them when it entered a preliminary injunction.

Fifth, § 1116(d)(4) says nothing about the burden of proof in a wrongful seizure counterclaim and thus would not support Diamond & Gem's argument even if it were intended to apply to § 1116(d)(11). Because nothing in the statute or in *Martin's I* shifts the burden to Martin's to disprove Diamond & Gem's counterclaim, the jury instructions were proper.

## VI.

Diamond & Gem argues that the district court, in the same order in which it granted Martin's partial summary judgment, improperly granted a motion by Martin's to strike or exclude evidence Diamond & Gem sought to introduce during the second trial on the wrongful seizure counterclaim. Diamond & Gem sought to introduce the testimony, in the form of declarations of seven witnesses, that Diamond & Gem contends would further bolster the claim that it never sold counterfeit Herend porcelain.

We review refusals to reopen discovery for abuse of discretion. *Keyes v. Lauga*, 635 F.2d 330, 335 (5th Cir. Unit A Jan. 1981). The district court's discretion in managing trials "extends on remand to all areas not covered by the higher court's mandate." *See Cleveland v. Piper Aircraft Corp.*, 985 F.2d 1438, 1449 (10th Cir. 1993). If the court perceives "manifest injustice" in limiting evidentiary proof at a new trial, however, it may, with proper notice, allow additional witnesses and relevant proof. *See id.* at 1450.

The court granted the motion by Martin's because the "discovery deadline expired long ago" and because at the time of the 1995 trial, it was Diamond & Gem that sought an expedited trial schedule. Moreover, Diamond & Gem never formally moved to have discovery reopened, and the court was skeptical that Diamond & Gem would prevail, even if it had filed, because it likely would not be able to

---

[14] *See* S. REP. NO. 98-526, at 15 ("The Committee does not intend that these orders be used against reputable businesses except under unusual circumstances.").

demonstrate "manifest injustice."[15]  Based on Diamond & Gem's post-remand proffering of additional evidence without any explanation of why it did not offer it at the first trial, and based on the injustice that might result for Martin's in having to prepare for this new evidence, the court did not abuse its discretion in limiting Diamond & Gem to the witnesses and evidence it offered at the first trial.

## VII.

In summary, we affirm in part  the denial of Diamond & Gem's motion to amend and clarify the effect of the injunction, but we remand the injunction for further revision consistent with *Martin's I* and this opinion.  The partial summary judgment in favor of Martin's on the question of bad faith is affirmed, and we conclude that the court did not err in charging the jury that Diamond & Gem had the burden of proof on its wrongful seizure counterclaim and did not abuse its discretion in limiting Diamond & Gem to the evidence it offered at the first trial.

The judgment is AFFIRMED in part, REVERSED in part, and REMANDED.

---

[15] *See American Int'l Trading Corp. v. Petroleos Mexicanos*, 835 F.2d 536, 539 (5th Cir. 1987) ("If the defendants knew or should have known that the witnesses were necessary, then the exclusion of those witnesses was not manifestly unjust.").