**TOTAL CONTAINMENT, INC.,**

v.

**DAYCO PRODUCTS, INC.**

**No. CIV.A. 1997–CV–6013.**

United States District Court,
E.D. Pennsylvania.

July 19, 2001.

Philip G. Kircher, Jennifer Dufault James, Ralph G. Wellington, Margaret S. Woodruff, J. Robert Stoltzfus, Thomas S. Bloom, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, for plaintiff.

Nathan A. Schachtman, Glenn P. Callahan, McCarter & English, Philadelphia, PA, Mark L. Manewitz, Michael T. Heyrich, Frank E. Derby, Cynthia V. Fitzgerald, James J. Savage, John A. Amodeo, Edward V. Filardi, Skadden, Arps, Slate, Meagher & Flom, LLP, New York, NY, for defendant.

### *MEMORANDUM AND ORDER*

SCHILLER, District Judge.

On May 3, 2001, I ordered retrial in this action limited to the issue of damages on

plaintiff Total Containment's ("TCI") claim for breach of a pricing provision in a 1993 supply agreement between the parties. Presently before this court is defendant's motion in limine to exclude a supplemental expert report by Dr. William Latham III, TCI's economics expert, and related evidence. After reviewing the briefs of the parties and hearing oral argument, and for the reasons discussed below, I grant Dayco's motion in part and deny it in part.

## BACKGROUND

The facts and history of this dispute were set out at length in a prior Memorandum and Order and need only be summarized here. *See Total Containment, Inc. v. Dayco Products, Inc.*, No. 97–6013, 2001 WL 984708, \*\*1–3 (E.D.Pa. May 3, 2001) ("*TCI II*"). TCI and Dayco entered into two agreements under which Dayco was to design and provide a primary pipe to be used in an underground gasoline storage and transportation system. TCI's underground system was named Enviroflex. The pipes proved susceptible to degradation, and a number of service stations outfitted with Enviroflex began to fear imminent leaks of gasoline, and some system actually experienced pipe failure. TCI filed suit against Dayco, claiming that the leaks were caused by a design defect in the coating of the primary pipe.

At trial in the fall of 2000, TCI pressed two theories of liability. First, TCI sued for breach of warranty on the ground that the primary pipe was defective. Second, TCI sought damages for a price increase effected by Dayco in 1995 for the primary pipe. A jury found the warranty claim barred by the Pennsylvania Commercial Code's statute of limitations, and awarded TCI $23 million on its claim for Dayco's breach of the pricing provision. In a Memorandum and Order, I granted remittitur on the breach of pricing claim because the evidence presented at the first

trial supported a maximum damage award of $1,325,808—the total amount of the overcharges on the primary pipe. *See TCI II*, at \*\*23–25. Specifically, I found that TCI had not introduced sufficient evidence of consequential damages on the breach of pricing claim. *See id.*, at \*\*25–27. I gave TCI the option of accepting remittitur or a new trial limited to damages on the breach of pricing claim. TCI refused remittitur, and I ordered a new trial set to begin on August 6, 2001.

At a status conference on May 30, 2001, TCI raised the issue of further discovery to support a claim for damages in excess of $1.3 million on its breach of pricing claim. I expressed my skepticism as to the admissibility of new evidence, but the parties agreed to engage in limited discovery. Subsequently, TCI obtained a supplemental expert report from Dr. Latham. In that report, TCI for the first time establishes (or attempts to establish) an evidentiary link between Dayco's price increase and consequential damages. Dr. Latham's amended report breaks those consequential damages into two categories: First, he opines that Dayco's price increase "directly led TCI to produce its own [primary] pipe to protect itself from unilateral decisions by Dayco." Dayco Motion in Limine, Exh. A, at 5 (Supplemental Expert Report of Dr. Latham) ("June 2001 Latham Report"). Subcomponents of this category include capital costs, interest payments on loans taken to finance the development project, labor costs ascribed to the project, and fees associated with testing and certifying TCI's primary pipe in the U.S. and Europe. The second category of consequential damages is Dr. Latham's contention that Dayco's price increase prevented TCI from lowering its prices in response to competition in the market for gasoline storage and transportation systems, causing TCI to lose sales of Enviroflex sys-

tems.[1]  *See* June 2001 Latham Report at 6. Together with the original $1,325,808 million in direct damages representing the overcharge on pipe purchased by TCI from Dayco, these alleged damages total $10,395,239, or $11,321,496 when adjusted for present value.

Defendant Dayco Products ("Dayco") has now filed a motion seeking exclusion at trial of Dr. Latham's June 2001 Expert Report.  It asserts that Dr. Latham's report relies on 336 documents, 332 of which had not previously been produced in discovery.[2]  Dayco also claims it will need to depose (according to TCI, re-depose) up to twenty-eight (28) witnesses, whom have not yet been identified to the court.

Dayco seeks the exclusion of the June 2001 Latham Report and related evidence on three grounds.  First, because TCI did not produce the 332 documents during discovery for the original trial, Dayco seeks their exclusion as a sanction for violation of Rule 26.  Second, it argues that TCI posited throughout discovery and the first trial that only $1,325,808 in damages arose from Dayco's price increase.  Third, Dayco argues that allowing TCI to explore a new theory which it did not explore at the first trial would violate the basic principle that a new trial may not be granted merely to allow the plaintiff to present a better case. I asked the parties to address a fourth ground at oral argument (highly related to Dayco's third rationale)—that district courts possess the discretion to exclude new theories and evidence not introduced at the original trial.  In *TCI II*, I deferred decision on whether TCI could proffer new

evidence on retrial not on the record at the original trial.  *See TCI II*, slip op. at 54–55.  At oral argument, counsel for Dayco appeared to admit that this matter is one committed to the court's discretion, but also raised the possibility of sanctions under Rule 37 for violating Rule 16.  I will address all five grounds.

## DISCUSSION

### I.  Exclusion as Sanction for Discovery Violations

■ Dayco maintains that exclusion is warranted under Rule 37 because TCI failed to disclose any computation of consequential damages on the breach of pricing claim and documents supporting such computation in violation of Rule 26(a)(1)(C), 26(a)(3)(C), and 26(g)(3).  However, neither rule provides the court with a sufficient basis for exclusion of TCI's recently proffered evidence.  Rule 26(a)(1)(C) requires automatic initial disclosure of "a computation of any category of damages claimed by the disclosing party."  As permitted by the federal rule in effect at the time of the original discovery, the Eastern District of Pennsylvania opted out of Rule 26(a)(1) and did not require initial disclosures of damage computations.

Rule 26(a)(3)(C) requires "identification of each document or other exhibit ... separately identifying those which the party expects to offer and those which the party may offer if the need arises" at least thirty days before trial unless otherwise directed by the Court.  As TCI rightly notes, it did disclose Dr. Latham's amended report and 332 pages of new documents

1.  Generally, lost sales are a subcategory of consequential damages under section 2715 of Pennsylvania's Commercial Code 2715.  See *AM/PM Franchise Ass'n v. Atlantic Richfield Co.*, 526 Pa. 110, 584 A.2d 915 (1990).

2.  Dayco claims these newly produced documents consist of:  (1) The price lists of TCI's

competitor, Environ;  (2) summaries of TCI's capital expenditures from 1997 to 1999;  (3) handwritten lists of sales totals by salesmen for 1994–1997;  (4) interest expense spreadsheets;  (5) invoices from testing agencies for 1997–2000;  and (6) 1994 and 1997 sales reports.

more than thirty days before the upcoming retrial; the new evidence cannot be excluded on the basis Dayco proposes.

■ Lastly, Dayco refers to 26(g)(3) as a basis for sanctions because TCI improperly certified its responses to Dayco's discovery requests as complete and raised relevancy objections to requests for the production of documents which it now attempts to introduce. However, the only remedy allowed under 26(g)(3) is monetary sanctions against the disclosing or objecting party's lawyer, which is of little avail on a motion in limine.

## II. Exclusion due to Judicial Estoppel

■ Dayco's remaining grounds seek to prevent TCI from introducing its new theories on the basis of the inherent powers of the court, such as judicial estoppel. Three elements must be met before judicial estoppel is applied: (1) the party to be estopped must take a position irreconcilably inconsistent with a previous position; (2) the party change its position in bad faith, in a manner threatening to the court's authority or integrity; and (3) the use of judicial estoppel is tailored to remedy the affront to judicial authority or integrity. *See Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773, 781 (3d Cir.2001). Bad faith means an "intent to play fast and loose with the court." *See id.* at 781. For a litigant to be said to have acted in bad faith, the litigant must be "culpable" in some manner, for instance, by intentionally contradicting himself or herself to gain unfair advantage, and the litigant's prior position must be accepted or adopted by the Court. *See id.*

Dayco argues that TCI is estopped from seeking consequential damages because of two of its prior representations. First, it argues that TCI's presentation at trial, and documents associated thereto, show TCI believed $1.3 million to be the maximum on its pricing claim. Second, it argues that TCI's representations during discovery that documents pertaining to development of its primary pipe were irrelevant.

■ I cannot say that TCI affirmatively represented to the Court that there were no consequential damages on the breach of pricing claim. While some of TCI's filings with the Court may imply such a position, other papers indicate that TCI maintained that the warranty and pricing claims jointly caused lost profits. TCI has explained that it omitted its concurrent causation theory at the fall of 2000 trial in an attempt to simplify the case for the jury. *See* TCI Response to Motion in Limine, at 16. Several documents drafted by TCI for the first trial demonstrate its concurrent causation theory, including placing lost sales and profits under separate headings. *See* Dayco Motion in Limine, Exh. K, at 18 (TCI's pretrial memorandum of Oct. 4, 2000); Exh. Q (Plaintiff's exhibit P–615a at original trial summarizing damage claim); Exh. T (TCI response to request from jury for damage claims). The only document which gives me pause is TCI's verdict sheet, which explicitly listed $1.3 million as the highest (indeed, only) figure recoverable on the pricing claim. However, it is reasonable to assume that TCI drafted the verdict sheet to conform with the "simplified" case it hoped to present to the jury.

■ As to Dayco's second ground for judicial estoppel—TCI's objections during discovery—those objections were never the subject of any motion, nor did this court sustain those objections based on TCI's representations. Because its prior position was never adopted or accepted by the Court, it cannot be said that TCI acted in bad faith for the purposes of judicial estoppel. *See Montrose*, 243 F.3d at 781.

Because, I cannot find that TCI has taken irreconcilable positions or acted in bad faith vis-a-vis the court, judicial estoppel is inappropriate.

### III. Exclusion Because New Trials May not Be Granted to Allow Improvement of Plaintiff's Case

■ Dayco next argues that the Court should exclude evidence because a "new trial may not be granted merely because [a party] may be able to present a better case in another trial." Dayco Motion in Limine, at 17 (quoting 6A Moore's Fed. Prac., 59.13[5] (3d ed. 2000)). I do not dispute that statement as a general matter. However, I have already granted a new trial as a consequence of Dayco's remittitur motion. Dayco also cites *Rochez Bros. v. Rhoades* for the proposition that retrials are not given to provide the plaintiff with an opportunity to improve its case. *See Rochez Bros. v. Rhoades*, 527 F.2d 891, 894 (3d Cir.1975). Again, I agree. However, as the *Rochez* court recognized, whether to allow new evidence at retrial is discretionary with the court, with due regard for fairness to the parties and judicial economy. *See id.* at 894 n. 6. That discretionary standard has been refined by more recent appellate precedent discussed below.

### IV. Exclusion as an Exercise of Court Discretion on Retrial

■ District courts have the discretion to admit or exclude new evidence on retrial. *See Habecker v. Clark Equip.Co.*, 36 F.3d 278, 288 (3d Cir.1994) ("*Habecker III*"); *see also Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 774 (5th Cir.1999); *Cleveland v. Piper Aircraft Corp.*, 985 F.2d 1438, 1449 (10th Cir.1993);

11 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure*, § 2803, at 50 (2d ed. 1995). The Court must be guided by considerations of fairness to the parties, *see Martin's Herend Imports*, 195 F.3d at 774; *Cleveland*, 985 F.2d at 1449–50, and avoid undue prejudice to either party. *See Habecker v. Clark Equip.Co.*, 942 F.2d 210, 218 (3d Cir.1991) ("*Habecker II*"). Only where a court perceives a manifest injustice in limiting evidence at retrial must it allow additional testimony and exhibits. *See Martin's Herend Imports*, 195 F.3d at 775.

The *Habecker* decisions demonstrate the wide latitude afforded to trial judges in narrowing the scope of issues for retrial. In *Habecker II*, the Third Circuit remanded for a new trial with a reminder that the trial court below possessed discretion to admit or exclude evidence subject to an undue prejudice standard. *See Habecker II*, 942 F.2d at 218. The district court then proceeded to exclude evidence on a theory of liability which Pennsylvania courts had only clearly recognized weeks before retrial. *See Habecker v. Clark Equip.Co.*, 797 F.Supp. 381, 394 (M.D.Pa. 1992) (Rambo, J.). When the Court of Appeals again addressed the case, it found that the district court had not abused its discretion. The district court was permitted to find that the plaintiff had made a tactical decision not to pursue the newly-recognized theory at the earlier trial because the law was unsettled at the time. *See Habecker III*, 36 F.3d at 287–88. The Circuit Court also noted that at the first trial, no evidence was admitted on the new theory, no argument was made to the jury, and no points for charge were requested on that point. Consequently, there was no abuse of discretion in precluding the plaintiff from pursuing a new theory in a subse-

quent trial.[3]

■ Like the plaintiff in *Habecker*, TCI now seeks to proffer new theories after making a tactical decision not to do so at the prior trial. In the original trial, TCI introduced evidence of lost sales and lost profits, but linked the specific amount of consequential damages sought to the breach of warranty claim. TCI proffered no evidence regarding its capital expenditures to develop and manufacture its own brand of primary pipe.

Addressing, as I must, the potential unfairness and prejudice to the parties, I find that TCI may not introduce evidence for costs associated with the development of its own brand of primary pipe. TCI entirely neglected to introduce evidence regarding development costs at the original trial. The wisdom of TCI's tactical decision is best left to TCI, but a plaintiff omits evidence necessary to sustain its damage award at its peril. *See Natural Res. Def. Council v. Texaco Ref. & Marketing*, 2 F.3d 493, 504 (3d Cir.1993) ("Failure to adduce evidence adequate to sustain a judgment is generally fatal"). TCI had an adequate opportunity during three years of discovery and a five week trial to explore damages relating to the development of the new pipe, but simply chose not to do so. The parties conducted discovery from 1997 until almost the eve of trial in October 2000. Dayco sought documents relating to TCI's expenditures to develop and manufacture TCI's brand of primary pipe, only to learn *now* that some relevant documentation was not disclosed. Dayco sought a continuance of the trial to complete discovery, but TCI opposed it and insisted the trial proceed as scheduled on October 11, 2000. TCI presented no evidence of costs relating to primary pipe development, made no argument to the jury, and did not request a charge to the jury on point. *Compare Habecker III*, 36 F.3d at 288.

■ However, TCI may introduce evidence of sales and profits lost as a consequence of the breach of pricing claim. TCI introduced evidence of lost sales and profits at the fall of 2000 trial. I granted remittitur because TCI had not established a sufficient causal connection between Dayco's price increase and any reasonably specific portion the total lost profits which it sought. However, one can construe one piece of evidence in the fall of 2000 trial as attempting to set up that link: a market report listing "pricing" as a factor which hampered TCI's growth. While I previously held that statement alone would not suffice to survive a motion for remittitur, *see TCI II*, at *26, it would be unfair to prevent TCI from expanding upon evidence which it previously introduced.

In allowing TCI to improve upon its case, the potential prejudice on Dayco is minimal: it will largely confront evidence and witnesses already admitted at the first trial. Discovery on this limited issue should be relatively short. If TCI cannot reasonably accommodate the discovery which Dayco anticipates is necessary, I will

---

**3.** As suggested by TCI, I reviewed the district court docket sheet in *Habecker* to learn more about subsequent proceedings following the Circuit Court's third remand. Judge Rambo transferred the case to Chief Judge Vanaskie. As TCI indicated at oral argument, he permitted the parties to file new pretrial memoranda and admitted new evidence. He also granted a defense motion to limit issues on retrial. *See* Memorandum and Order Granting Motion to Limit Issues and Denying Motion to Amend Complaint, *Habecker v. Forklifts, Inc.*, No. 86–0353 (M.D.Pa. Feb. 21, 1997) (document no. 614). Unfortunately, I could not obtain a copy of his memorandum in time to issue this decision. A fourth trial was held in February 2000. As of July 2001, after fifteen years and 864 docket entries, the case appears to be headed for mediation and settlement.

consider an appropriate motion filed in that regard. Dayco expressed concern at oral argument that because the case is now proceeding on a focused and limited issue, TCI witnesses will adapt their testimony and claim that the price increase did cause lost sales. As a practical matter, Dayco has extensive deposition and trial testimony with which to impeach any potential "suddenly recalled" testimony. The potential for impeachment should reduce the potential prejudice to Dayco.

Seeking the inclusion of both new theories which Dr. Latham raises, TCI raises two arguments against application of the standards set for in *Habecker III* and *Martin's Herend*. It then argues that if the court exercises discretion, the court should do so in its favor.

First, TCI argues that *Habecker* and *Martin's Herend* dealt with retrial following appeal and remand, while the upcoming retrial in this case has been ordered in recognition of TCI's constitutional right to a jury trial following remittitur. The latter type of retrial, TCI contends, includes an inherent right for the plaintiff to improve its case. Without that inherent right, TCI posits, the constitutional right to a jury retrial is hollow because the plaintiff would be limited to retrying the same defective case which caused remittitur. I disagree. If TCI's theory were true, then any time a retrial is reordered at a defendant's request, the plaintiff should be permitted to introduce new evidence to mend defects in its earlier presentation. The *Habecker* court placed no such limitation on the court's discretion.

Second, TCI maintains that *Martin's Herend* and its manifest injustice standard is not the law in this Circuit in light of the *Habecker* cases. The undue prejudice standard adhered to by the Third Circuit is sufficiently similar to the manifest injustice standard applied by the Fifth Circuit

that I consider *Martin's Herend* to be persuasive.

Lastly, TCI urges that I use my discretion and permit them to introduce new evidence as the court did in *Mauri v. Safeway Trails, Inc.*, No. 85–7293, 1986 WL 12935, 1986 U.S. Dist. LEXIS 17841 (E.D.Pa. Nov. 13, 1986). In *Mauri*, the court granted remittitur of a pain and suffering award. Shortly before the retrial, plaintiffs produced new medical experts, and the court admitted their testimony. The court found that the defendants could not claim surprise by the new evidence because they had never sought to depose medical experts from the prior trial and the plaintiffs had acted expeditiously in securing testimony. Here, in contrast, the defendant has actively participated in discovery and defense of its case. Moreover, the *Mauri* plaintiffs only sought to introduce medical evidence to buttress the plaintiff's own testimony regarding pain and suffering. To the extent that TCI seeks admission of evidence to massage testimony and evidence from the earlier proceeding, I am allowing it. However, I will not permit it to explore primary pipe development costs for reasons described herein. *See supra* at 339. No mention may be made of what Dr. Latham describes as the second category of TCI's damages on the pricing claim, i.e. capital costs ($4,899,049), interest costs ($1,156,171), personnel costs ($108,743), and laboratory certification costs (unreported figure). *See* June 2001 Latham Report at 4–6; 11.

## V. Exclusion Pursuant to Rule 16

■ At oral argument, Dayco counseled the court to order exclusion pursuant to Rule 16 and Rule 37. When feasible, district courts should invoke powers expressly delegated by the Federal Rules

before solely relying on inherent authority, *see Montrose*, 243 F.3d at 784–85. Whether I rely on Rule 37 or my inherent power, I reach the same result.

■ An order entered pursuant to Rule 16 governs the "subsequent course of the action." FED.R.CIV.P. 16(e). Pursuant to the Local Rule of Civil Procedure 16.1, counsel for the parties draft pretrial memoranda in lieu of such an order, but the effect is the same as an order. A court may allow deviation from the order or memorandum if necessary to prevent manifest injustice. *See id.; see also Petree v. Victor Fluid Power, Inc.*, 831 F.2d 1191, 1194 (3d Cir.1987). If deviation is not substantially justified, or if no manifest injustice is shown, a court may exclude designated claims and supporting evidence. *See* FED.R.CIV.P. 16(f) (citing Rule 37(b)(2)(B)). Rule 37(b)(2)(B), in turn, is governed by what was a four factor test. *See Gibson v. Nat'l R.R. Corp.*, 176 F.R.D. 190, 192 (E.D.Pa.1997) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–05 (3d Cir.1977) *overruled on other grounds by Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir.1985)); *Kotes v. Super Fresh Food Mkts.*, 157 F.R.D. 18, 19 (E.D.Pa.1994). As I described that test in *TCI II*, evidence may be excluded based upon: (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court; and (4) bad faith or willfulness in failing to comply with the district court's order; (5) the importance of the testimony or evidence to the party seeking its admission. *See TCI II*, at *19 (citing *In re TMI Litig.*, 193 F.3d 613, 721 (3d Cir.1999) and *Sowell v.*

*Butcher & Singer, Inc.*, 926 F.2d 289, 302 (3d Cir.1991)).

■ Turning to the new theories and evidence TCI seeks to introduce here, no mention of the primary pipe development can be found in TCI's complaint or pretrial memorandum, and the supporting evidence is genuinely new and surprised Dayco. *See Scopia Mortg. Corp. v. Greentree Mortgage Co., L.P.*, 184 F.R.D. 526, 531 (D.N.J.1998) (Simadle, J.). In contrast, TCI included lost sales in its pretrial memorandum as a separate category of damages and introduced a number of witnesses and exhibits to that effect in the original trial. Dr. Latham's June 2001 Report only seeks to attribute a portion of those losses to Dayco's price increase. I do not view TCI's current stance rises to the level of "noncompliance" with the final pretrial order. Again, to the extent Dayco feels that it will be prejudiced by the short time left for discovery, it may file any appropriate motions.

I summarily reject the TCI's notion that I already permitted additional discovery and amendment of its pretrial memorandum to include lost profits. I only condoned the issuance of Dr. Latham's June 2001 Report. In both the Memorandum on post-trial motions and at the status conference on the progress of the second trial, I specifically indicated that TCI's attempt to introduce new evidence on consequential damages would be subject to further ruling by this court. The new pretrial submissions should be in substantial conformity with those used at the original trial, with exceptions I permit today and to reflect the limited scope of the retrial.

## VI. Summary Judgment

Because the potential for lost profits appears to generate a genuine issue of material fact, I decline Dayco's invitation

(admittedly, an invitation prompted by my own words) to dispose of the remainder of this case on summary judgment.

## CONCLUSION

Accordingly, am exercising my expressly delegated and inherent discretion in precluding TCI from making any claim for consequential damages for expenditures relating to the development and manufacture of TCI's brand of primary pipe, including capital costs, interest costs, personnel costs, and laboratory certification costs. *See* June 2001 Latham Report at 4–6; 11. Specifically, I find that such a holding prevents unfair prejudice to Dayco and poses no manifest injustice to TCI. At the same time, TCI may refine its prior presentation and attempt to prove that Dayco's price increase caused TCI to lose sales and profits. *See id.* at 6–8; 11. An appropriate order follows.

### *ORDER*

AND NOW, this 19th day of July, 2001, upon consideration of Defendant's motion in limine to exclude the supplemental expert report of Dr. William Latham, III, Plaintiff's opposition thereto, oral argument thereon, and in light of the reasoning above, it is hereby **ORDERED** that:

Defendant Dayco Product's Motion in Limine (*docket no. 224*) is **GRANTED IN PART AND DENIED IN PART** as follows:

(1) Dr. Latham's June 2001 Report and related evidence, insofar as they attempt to establish: (a) "Direct Damages in the Form of Lost Profits from Dayco's Price Increases;" and (b) "Additional Damages in the Form of Lost Profits from Dayco's Price Increases"—are admissible in the retrial on the breach of pricing claim. *See* June 2001 Latham Report, at 3–4; 6–8.

(2) In all other respects, Dr. Latham's June 2001 Report and related evi-

dence are excluded. *See e.g.* June 2001 Latham Report, at 4–6.