OPINION OF THE COURT
PER CURIAM.
I.
As we write for the parties only, we do not extensively set out the background of this case. Lindy Marwood is a teacher in the Elizabeth Forward School District (hereinafter “EFSD”). Marwood is a proponent of “Learnball,” a classroom motivational system. As described by Marwood, Learnball consists of a package of techniques, some of which, such as dividing students into teams, are not uncommon even in classrooms where Learnball is not used. In April 1992, EFSD banned the use of Learnball in the classroom, and Marwood brought suit in the United States District Court for the Western District of Pennsylvania. After the inception of the lawsuit, EFSD promulgated a new set of rules entitled, “Classroom Management Techniques,” which more specifically codified EFSD’s prohibitions on Learnball. The first Marwood case was terminated when Marwood and EFSD entered into a settlement agreement (hereinafter “the Settlement Agreement”) in 1996. The Settlement Agreement, which was set out in the District Court’s Settlement Order, among other things, eliminated all mention of Learnball in the Classroom Management Techniques,[1] allowed Marwood to use in her classroom a hoop and ball, items that are employed in the Learnball program, and permitted Marwood to lead a nonschool sponsored Learnball League Club. See App. 29a-30a. In 1997, Mar-wood began to insist that the Settlement Order allowed her to use Learnball in the classroom and admitted to using Learnball in the classroom. Subsequently, EFSD disciplined Marwood for her use of Learn-ball in the classroom. This discipline was brought to arbitration, and ESFD sought clarification of the Settlement Order. The arbitrator refused to consider whether the Settlement Order prohibited Marwood from using Learnball, stating that any such clarification would need to be provided by the District Court. EFSD subsequently filed with the District Court a “Petition for Clarification of the Settlement Order of June 19, 1996.” EFSD asked the District Court to make it clear that the Settlement Order did not permit the use of Learnball in the classroom. The District Court in an order dated July 17, 2002, clarified the Settlement Order, stating that EFSD had not agreed to permit the use of Learnball in the classroom and had not otherwise waived its right to ban Learnball, that a constitutionally permitted ban of Learnball was implemented through the Classroom Management Techniques, and that Marwood was limited in her use of the Learnball program to the extracurricular activity set out in the Settlement Order. See App. at 14a-15a. Marwood now appeals this order, arguing that the District Court lacked jurisdiction to interpret the Settlement Order, that *335 there was no ripe case or controversy before the District Court, that the District Court’s interpretation of the Settlement Order was clearly erroneous, and that the Court erred in disposing of the matter without an evidentiary hearing. Because the Supreme Court has held that consent decrees are to be treated as injunctions for the purposes of interlocutory appeal under 28 U.S.C. § 1292(a)(1), see Carson v. American Brands, Inc., 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981), we have jurisdiction under 28 U.S.C. § 1292(a)(1) to review the order of the District Court if the Court modified the Settlement Order, but not if the Court merely interpreted the Order. United States Fire Ins. Co. v. Asbestospray, Inc., 182 F.3d 201, 207-08 (3d Cir.1999); see also Martin’s Herend Imports, Inc. v. Diamond & Gem Trading United States of America Co., 195 F.3d 765, 769 (5th Cir.1999); In re Seabulk Offshore, Ltd., 158 F.3d 897, 899 (5th Cir.1998); Mikel v. Gourley, 951 F.2d 166, 168-69 (8th Cir.1991); Motorola, Inc. v. Computer Displays Int’l, Inc., 739 F.2d 1149, 1155 (7th Cir.1984). Moreover, in the latter event, we perceive no other basis for appellate jurisdiction. We must determine whether, as Marwood argues, the District Court substantively modified the Settlement Order or whether it merely interpreted that Order.
II.
A.
Before reaching the question of appellate jurisdiction, however, we first consider another jurisdictional question. Marwood argues that the District Court did not retain jurisdiction over the enforcement of the Settlement Order. This argument fails. Though we have stated that the “phrase ‘pursuant to the terms of the Settlement’ in the dismissal order [is] insufficient to incorporate the terms of the settlement agreement and therefore [does] not confer subject matter jurisdiction over settlement enforcement,” Shaffer v. GTE North, Inc., 284 F.3d 500, 503 (3d Cir.2002), we have also held that a District Court retainech jurisdiction where the District Court incorporated a settlement agreement into its final order. See Halderman v. Pennhurst State Sch. & Hosp., 901 F.2d 311, 317 (3d Cir.1990) (stating that where the District Court not only approved but incorporated the final settlement agreement into its order that it had “retained jurisdiction over the case sub judice”). Here, the Settlement Order clearly incorporated the Settlement Agreement by specifically and explicitly setting out the terms of the agreement within the order itself. Therefore, under our case law, the District Court clearly retained jurisdiction over the continued enforcement and interpretation of the Settlement Order. The fact that the District Court retained jurisdiction over the continued enforcement of the Settlement Order also suffices to answer Marwood’s claim that there was no ripe case or controversy over which the District Court could exercise jurisdiction. See Kokkonen v. Guardian Life Insurance Co. of America, 511 U.S. 375, 381, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (stating that ancillary jurisdiction to enforce an agreement would exist where the parties have an obligation to comply with the settlement order because the “terms of the settlement agreement” were incorporated into the order).
B.
Turning to the issue of appellate jurisdiction, we hold that the District Court merely interpreted the Settlement Order. A settlement order is to be “construed consistently with fundamental precepts of contract construction.” Washington Hospital v. White, 889 F.2d 1294, 1300 *336 (3d Cir.1989). Determining whether a settlement order is ambiguous is a question subject to our plenary review. Thermice Corp. v. Vistron Corp., 832 F.2d 248, 252 (3d Cir.1987). As we stated in Washington Hospital, the meaning of a settlement agreement should initially be discerned by looking to the four corners of the agreement itself. Washington Hospital, 889 F.2d at 1300. An agreement is unambiguous when it is reasonably capable of only one construction. Id. at 1301. Furthermore, when determining whether an agreement is ambiguous, the Court “does not just ask whether the language is clear; instead it hears the proffer of the parties and determines if there are objective indicia that, from the linguistic reference point of the parties, the terms of the contract are susceptible of different meanings.” American Flint Glass Workers Union v. Beaumont Glass Co., 62 F.3d 574, 581 (3d Cir.1995) (internal quotation marks and citations omitted). We are also to construe the Settlement Order “so as to give meaning to all of its words and phrases.” Halderman, 901 F.2d at 318 (3d Cir.1990).
Applying these principles to the Settlement Order, it is clear that the Order is not ambiguous and that Harwood has not provided the Court with a reading that is reasonable. If the Settlement Order had been intended to rescind the entire Learn-ball ban and to allow the use of the technique in the classroom, one would think that it would say so, but it clearly does not. Rather, the Settlement Order merely removes a reference to Learnball in the text,[2] while retaining the prohibitions within the Classroom Management Techniques against specific Learnball techniques. Learnball consists of a package of techniques all of which are supposed to be used together. Learnball literature specifically states that it is not proper to use only some of the techniques. App. at 441a. Thus, the fact that the Settlement Order indisputably prohibits some Learnball components means that Learnball as such is not allowed. The mere fact that the Order allows Harwood to use the “hoop and ball” in the classroom plainly does not show that the entire Learnball package was allowed. Furthermore, the fact that EFSD permitted Harwood to lead a non-school-sponsored Learnball League Club also supports the District Court’s interpretation. If Learnball were not banned within the classroom, such permission would not need to be stated or given. Given all this, we conclude that the Settlement Order was not ambiguous and that the interpretation given it by the District Court was not in error and did not in any substantive way modify the prior Order. As a result, we lack jurisdiction under 28 U.S.C. § 1292(a)(2). We therefore dismiss the appeal.
III.
We have reviewed all of Harwood’s arguments, but we conclude that the appeal must be dismissed.

. The original Classroom Management Techniques made only one mention of Learnball in a provision prohibiting advertisement for "Learnball Superbowl Activities.” App. at 40a.

. It is important to note that this reference was merely to solicitation on behalf of the Learnball tournament.