57 CCPA

**Application of SUN OIL COMPANY.**

**Patent Appeal No. 8320.**

United States Court of Customs and Patent Appeals.

May 28, 1970.

Donald R. Johnson, Philadelphia, Pa., attorney of record, for appellant.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents, D. Lenore Lady, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judges, and FISHER, Chief Judge, Eastern District of Texas, sitting by designation.

ALMOND, Judge.

Sun Oil Company brings this appeal from the decision of the Trademark Trial and Appeal Board, 155 USPQ 600 (1967), affirming the examiner's refusal to allow appellant's application to register "CUSTOM-BLENDED" for gasoline [1] on the ground that the mark is merely descriptive of applicant's goods within the meaning of section 2(e) (1) of the Trademark Act of 1946 (15 U.S.C. § 1052(e) (1)) and because the evidence

submitted has not clearly established a secondary meaning, denoting that the mark has become distinctive of appellant's goods, within section 2(f) of the Act (15 U.S.C. § 1052(f)).

The application seeking registration on the Principal Register alleges use since 1956. The mark is displayed on special pumps, called "blending pumps," at appellant's service stations. The application is designated a continuation of an earlier application filed July 13, 1961, in which registration on the Principal Register was sought for the same mark for gasoline and refused by the Trademark Trial and Appeal Board on the ground that the mark was merely a descriptive connotation to purchasers of applicant's goods.[2]

In his Answer, the examiner predicated refusal of registration on the ground that CUSTOM-BLENDED is merely descriptive of appellant's goods within the meaning of section 2(e) (1) because it is so highly descriptive of appellant's blended gasoline that it is incapable of becoming distinctive as claimed. It was the examiner's opinion that the term CUSTOM-BLENDED merely informs purchasers that various grades of gasoline from appellant's blending pumps are custom blended for them; that the word "custom" is commonly used to indicate things made to order; that it has very little trademark significance when used in connection with blended gasoline; that appellant is not entitled to exclusive appropriation of this term, which so aptly describes custom-blended gasoline; and that the conclusion derived from surveys conducted by appellant is that purchasers who are acquainted with appellant's Blue Sunoco gasoline know that such gasoline is custom blended.

In affirming refusal of registration, the board stated that granted that the generic terms for appellant's blended gasolines are pump-blended and multiple-grade gasolines, there is no question that " 'CUSTOM-BLENDED' has a merely

1. Serial No. 211,939 filed February 12, 1965.

2. In re Sun Oil Company, 144 USPQ 103 (1964).

descriptive significance in that it will immediately indicate to patrons of applicant's service stations that the various grades of gasoline dispensed thereat are custom blended to their needs and requirements"; that in view thereof and the decision on applicant's prior application, it was incumbent upon applicant to show that the facts and circumstances since that decision have changed in that " 'CUSTOM-BLENDED' now serves as an indication of origin of applicant's gasoline to the general public"; that the case, therefore, turned upon the sufficiency of applicant's evidence in that regard; that "the only definite conclusion that can be drawn from the surveys is that purchasers who are acquainted with applicant's 'SUNOCO' gasoline know that such gasoline is custom blended"; that this manifestly does not support applicant's assertion that CUSTOM-BLEND has acquired a secondary meaning as an indication of origin for gasoline, and that upon the record presented CUSTOM-BLENDED does not possess anything "other than a descriptive significance to purchasers of gasoline."

We have given a synoptic analysis of the board's able, well-considered and exhaustive opinion without reiterating essential facts of record. These facts are detailed in their essence and relevancy and supportive of the board's conclusions so clearly and aptly enunciated in its decision. We, therefore, incorporate herein by reference the opinion of the board and affirm its refusal of registration. The decision of the Trademark Trial and Appeal Board is, accordingly, affirmed.

Affirmed.

RICH, Acting Chief Judge (concurring).

I agree with the result reached by the majority which is supported by an opinion largely relying on and incorporating by reference the opinion of the board. While I do not disagree with anything said in the majority's opinion, I do not accord the survey evidence, by which it was attempted to show "secondary meaning," the significance apparently accorded it by the board. The examiner accorded it none. I do not agree with the board's statement that "This case turns upon the sufficiency of applicant's evidence" of "secondary meaning."

The examiner in this case was of the view, as the board reported, that CUSTOM-BLENDED "is *so highly* descriptive of applicant's blended gasoline that it is *incapable* of becoming distinctive as claimed." (My emphasis.) If that is so, registration must be refused under 15 U.S.C. § 1052(e) (1) no matter what evidence of alleged "secondary meaning" is adduced; in other words, under the facts of this case the law proscribes the *possibility* of a de jure "secondary meaning," notwithstanding the existence of 15 U.S.C. § 1052(f) and a de facto "secondary meaning." In re Deister Concentrator Co., 289 F.2d 496, 48 CCPA 952, 963 et seq. (1961), and cases cited therein.

In my opinion, CUSTOM-BLENDED is so highly descriptive that it cannot, under the law, be accorded trademark rights even though at some times, or to some people, or in some places, it has a de facto secondary meaning. My view was expressed by the examiner. I think that conclusively disposes of the matter. While I see no objection to pointing out to appellant that its evidence has not established "secondary meaning," I am unwilling to lead appellant or others to think that the fault was in the quantity or quality of its evidence rather than in the descriptiveness of the words sought to be registered.[1]    Appellant

---

1. I think the solicitor erred in arguing the case *solely* on the basis that the only issue before us is the sufficiency of applicant's evidence to show that CUSTOM-BLENDED now serves as an indication of origin. That was not the examiner's ground of rejection. It does not appear to me that the board ever made a different one and the examiner's refusal to register was affirmed. At best, the sufficiency of the evidence is a second-string argument.

should not be encouraged to try again to prove "secondary meaning." The only particular in which I do not fully agree with the examiner is that he said the word "custom" in CUSTOM-BLEND-ED "has very little trademark significance." I think it has none.

Appellant has argued that the descriptive term for its gasoline is "pump-blended." I do not question that that is *a* descriptive—or as appellant calls it "generic"—term; but a product may have more than one generically descriptive name. Because one merchandiser has latched onto one of the descriptive terms does not mean it can force its competitors to limit themselves to the use of the others, which appellant, it seems to me, is trying to do here. *All* of the generic names for a product belong in the public domain. The product itself, for example, is called gasoline in the United States but petrol in England. Clearly both of those names must remain free of proprietary claims, in either country. So it is, in my view, with respect to pump-blended and custom-blended. The examiner stated the factual basis for this view in pointing out that "custom," as in custom-built, custom-service,[2] custom-cut, custom-made, custom-tailored, custom-work, etc., merely indicates that it is done according to the customer's desire. That is exactly how appellant's gasolines are pump-blended—to give the customer what he asks for. I can think of no descriptive term which is more apt. In re Bailey Meter Co., 102 F.2d 843, 26 CCPA 1136 (1939).

FISHER, District Judge (dissenting).

Under the doctrine of "secondary meaning," a trademark, though originally descriptive of a type of product, is nonetheless entitled to registration if the mark has, by association with a business, come primarily to identify its user, rather than the product, to that part of the public interested in contracting with the trademark user. Application of Automatic Radio Mfg. Co., 404 F.2d 1391, 56 CCPA 817 (1969). Whether a descriptive mark has acquired secondary meaning depends upon the particular facts of each case. W. E. Bassett Co. v. Revlon, Inc., 354 F.2d 868 (2d Cir., 1966).

Briefly, it has been shown that appellant has used the mark in question for its gasoline exclusively and continuously over a period of some twelve years. There is evidence of extensive advertising of and sales of large volumes of gasoline under that mark during this period. Surveys of record suggest that in at least two areas where there are other marketers of multi-grade, pump-blended gasoline, the term CUSTOM-BLENDED is associated in the public mind with this appellant in a preponderance which can only be accounted for by recognition of origin. There is no evidence which would imply that the mark is of such a descriptive nature that granting trademark rights therein to the user would deprive others of their right to normal use of the language.

In light of these facts, it is respectfully submitted that the decision of the Trademark Trial and Appeal Board should be reversed and registration granted on the basis that the mark CUSTOM-BLEND-ED has acquired secondary meaning within Section 2(f) of the Act (15 U.S.C. § 1052(f)).

2. I take judicial notice that, as anyone can observe on the streets of Washington, if one looks past the CUSTOM-BLEND-ED pumps of a Sunoco station at the front of the apparently standard service station building, one sees the words CUSTOM SERVICE in red letters a foot high across the white front of the building.