UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————

No. 00-20741

———————————————

WACO INTERNATIONAL, INC.,
Plaintiff - Appellant-Cross-Appellee,

VERSUS

KHK SCAFFOLDING HOUSTON INC; ET AL.,
Defendants,

KHK SCAFFOLDING HOUSTON INC; JIM YUNG KIM
Defendants - Appellees-Cross-Appellants

KHK SCAFFOLDING & FORMWORK LTD; GMN SCAFFOLDING CORP
Defendants - Appellees.

———————————————————————————

Appeals from the United States District Court
Southern District of Texas

———————————————————————————

January 17, 2002

Before DUHÉ and BENAVIDES, Circuit Judges, and RESTANI, Judge.[*]

JANE A. RESTANI, Judge:

The primary issues before the court are (1) whether the district court applied the proper

standard for a Lanham Act wrongful seizure claim; (2) whether the district court abused its

discretion in allowing expert testimony regarding the standard of care for an *ex parte* seizure

order; (3) whether the district court abused its discretion in denying a permanent injunction; and

———————————————

[*]        Judge of the U.S. Court of International Trade, sitting by designation.

(4) whether a cross-appellant is entitled to additional attorney fees.  We affirm the district in all respects.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff-Appellant Waco International Inc. ("Waco") is a California corporation that manufactures scaffolding and shoring products.  Waco owns the federally registered trademarks "WACO" and "HI-LOAD."  Waco's scaffolding and shoring products are marked with a decal bearing the Waco mark.  Waco typically offers lines of scaffolding in red and blue, but has sold scaffolding in other colors at customer request.

KHK Scaffolding Houston, Inc., *et al.* ("KHK")  is a Texas corporation that sells scaffolding manufactured by its parent company in Dubai, United Arab Emirates, KHK Scaffolding & Formwork, Ltd. ("KHK Dubai").  KHK sells scaffolding that is compatible with products manufactured and sold by Waco and other companies.   In its sales brochure, KHK indicates the compatibility of its scaffolding by abbreviated designations (e.g. "Scaffold WR Frames" indicates compatibility with Waco Red frames).   The scaffolds themselves do not bear the Waco mark or a KHK mark.  The scaffolds are stamped "made in the U.A.E."  In addition, the scaffolds bear a safety label that reads as follows:  "Safety Instructions and Design Assistance available from KHK Houston, Inc.," followed by a telephone number.

In early 1998, KHK mailed brochures and solicitation letters to prospective customers.  Some of those materials stated that KHK was offering "Waco" products.  On April 2, 1998, Waco sent a cease and desist letter to KHK.  On April 20, 1998, Waco's investigator purchased scaffold frames from KHK.  The investigator was given an original "sales report" that identified

2

the frames as "WACO" frames. On April 20, 1998, KHK sent a letter to Waco's counsel stating that one of KHK's salespersons mistakenly quoted 'Waco Red' and 'Waco Blue' to six potential customers in the midst of his sales presentation, and that KHK would take measures to prevent such representations.

On April 30, 1998, Waco sued KHK for trademark infringement and for unfair competition under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, as well as for related causes of action under Texas state law. On the same date, Waco sought and obtained an *ex parte* seizure order under 15 U.S.C. § 1116(d)(1)(A). The seizure order permitted Waco to enter KHK's place of business and seize KHK's red and blue scaffolding and certain business records.

A post-seizure hearing was held on May 15, 1998, and a preliminary injunction hearing was held on June 8-10, 1998. The magistrate judge found that injunctive relief was not appropriate with respect to KHK's use of Waco Red and/or Waco Blue in describing the *style* or *compatibility* of its KHK products.[1] She found, however, that "invoices purporting to sell 'Waco Red' or 'Waco Blue' scaffolding . . . demonstrate a likelihood of confusion, warranting injunctive relief." *Proposed Findings of Fact and Conclusions of Law* (June 19, 1998). The magistrate judge recommended an injunction "enjoining KHK from quoting, describing, or purporting to sell, its products as 'Waco' products, 'Waco Red,' or 'Waco Blue.'" *Id.* The magistrate judge also recommended that the seizure order be dissolved pursuant to section 1116(d)(10)(A), reasoning that the products seized did not carry a "counterfeit mark." On July 20, 1998, the district court

_____

[1] The magistrate judge found that "in most cases, KHK is using the [Waco] mark in a descriptive sense, advertising its product as 'Waco Red style' or 'Waco Red compatible,' or 'interchangeable with Waco.'"

3

adopted the magistrate judge's recommendation in full.

KHK filed a counterclaim for compensatory and punitive damages for wrongful seizure under 15 U.S.C. § 1116(d)(11).[2]  Both parties subsequently filed motions for partial summary judgment.  On August 16, 1999, the magistrate judge recommended that Waco's motion be denied.   The magistrate judge also recommended that the court grant KHK's motion in part, reasoning that the seizure was wrongful as a matter of law because the KHK frames were "legitimate non-infringing merchandise."[3]  The judge recommended denial of summary judgment on KHK's claim for damages, noting that "evidence shows that the measure of damages allegedly sustained by KHK from the wrongful seizure is disputed."  On September 16, 1999, the district

_____

[2]  Section 1116(d)(11), which creates a cause of action for wrongful seizure, reads as follows:

> A person who suffers damages by reason of a wrongful seizure under this subsection has a cause of action against the applicant for the order under which such seizure was made, and shall be entitled to recover such relief as may be appropriate, including damages for lost profits, cost of materials, loss of good will, and punitive damages in instances where the seizure was sought in bad faith, and, unless the court finds extenuating circumstances, to recover a reasonable attorney's fee . . . .

[3] The judge reasoned as follows:

> [T]he KHK goods did not carry a Waco trademark or any labeling using the word "Waco."  As such, the goods cannot be considered 'counterfeit' and were wrongfully seized pursuant to section 1116(d)(4).  The court [at the post-seizure hearing], narrowly interpreting section 1116(d)(1) as an extraordinary remedy, found as a matter of law that the seizure of the scaffolding was not authorized by the statute because the scaffolding did not carry a counterfeit mark.

court adopted the magistrate judge's memorandum and recommendation in full.[4]

On December 3, 1999, the parties jointly submitted a proposed Pre-Trial Order, listing a contested issue as follows: "Whether the Court's [summary judgment] ruling that seizure of KHK-Houston's goods was a 'wrongful seizure' . . . as a matter of law . . . should be vacated in light of the new authority issued by the Fifth Circuit." In the Joint Proposed Jury Questions submitted as an attachment to the proposed Pre-Trial Order, both Waco and KHK proposed a jury question concerning wrongful seizure liability.

*Voir dire* was conducted on June 14, 2000, during which the judge informed the potential jurors of the procedural history of the case, including the fact that at summary judgment the *ex parte* seizure was found to be wrongful as a matter of law. A jury trial was then held on Waco's Lanham Act and state law claims and KHK's counterclaim for wrongful seizure damages.

The jury made the following findings, *inter alia*: (1) KHK had infringed Waco's trademarks, but that KHK's use constituted "fair use;" (2) KHK did not use a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services; (3) KHK did not engage in unfair competition or passing off; (4) Waco had seized goods that were predominantly non-infringing and had acted in bad faith in seeking the seizure order. The jury also awarded KHK $730,687 in attorney fees, $185,196 in costs, and $250,000 in punitive damages. The jury found, however, that KHK suffered $0 in lost profits and $0 in lost goodwill from the seizure. Final judgment was entered on June 30, 2000. In a minute entry order on June 30, 2000, the

---

[4] On November 15, 1999, Waco submitted a memorandum of new authority, in which it requested that the district court vacate its summary judgment ruling. KHK opposed what was effectively a motion to vacate. Waco did not file a rebuttal to KHK's opposition. The judge did not issue an order vacating summary judgment.

district court denied Waco's post-trial motion for permanent injunctive relief.

Waco seeks reversal of the district court's judgment awarding money damages to KHK and a remand for entry of a permanent injunction against KHK. KHK cross-appeals for attorney's fees pursuant to 15 U.S.C. § 1117(a) and prejudgment interest pursuant to 15 U.S.C. § 1116(d)(11).

## STANDARD OF REVIEW

Review of factual findings underlying a jury verdict is deferential: "Unless the evidence is of such quality and weight that reasonable and impartial jurors could not arrive at such a verdict, the findings of the jury must be upheld." *Ham Marine, Inc. v. Dresser Indus., Inc.*, 72 F.3d 454, 459 (5th Cir. 1995). Questions of law are reviewed *de novo*. *Munn v. Algee*, 924 F.2d 568, 575 (5th Cir. 1991). The district court's instructions to the jury are reviewed for abuse of discretion. *See EEOC v. Manville Sales Corp.*, 27 F.3d 1089, 1096 (5th Cir. 1994).[5]

Review of a district court's admission or exclusion of evidence is for abuse of discretion. *General Electric Co. v. Joiner*, 522 U.S. 136, 136 (1997). The denial of injunctive relief is reviewed under an abuse of discretion standard, while the legal conclusions underlying the denial are subject to *de novo* review. *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F. 3d 526, 537, 550 (5th Cir. 1998). Review of a denial of prejudgment interest is for abuse of discretion. *Ensley v. Cody Resources, Inc.*, 171 F.3d 315, 322 (5th Cir. 1999). We review an award of attorney's fees pursuant to section 1117(a) for abuse of discretion. *Moore Business Forms v. Ryu*, 960 F.2d 486,

---

[5] Waco raises on appeal various arguments as to errors of law made at summary judgment. As our review is of final judgment, we discuss these arguments only insofar as they relate to whether the jury was properly instructed as to the law, and whether the district court erred in not vacating the summary judgment, so as to confuse the jury.

491 (5th Cir. 1992).[6]

DISCUSSION

## I.  Waco's Appeal

## A.  Wrongful Seizure Liability

Waco claims that the district court erred in instructing the jury as to its summary judgment ruling that the *ex parte* seizure was wrongful as a matter of law.  Waco also claims error in the application of the standard for wrongful seizure liability.  Waco's arguments lack merit.

## 1.  Jury Instructions

Waco claims that the judge erred in giving an "opening instruction" to the "jury panel" at the "beginning of trial" that the court had found at summary judgment that the *ex parte* seizure was wrongful as a matter of law.[7] Waco asserts that the judge never retracted the "opening instruction" but, at the end of trial, charged the jury with determining whether Waco was liable

---

[6] Similarly, a decision to award or deny attorney's fees under section 1116(d)(11) is reviewed for abuse of discretion.

[7] The judge's comments in relevant part are as follows:

> On or about April 30th of 1998, Waco obtained from this court an *ex parte* seizure order.  An *ex parte* seizure order is one that the other side – in this case, KHK – did not have any chance to respond to.  "*Ex parte*" means only one side – in this case, Waco – was allowed to be heard on the motion.  Based on that order, Waco had impounded a number of Defendants' products and documents.  The Court later held a hearing and determined that Waco's seizure of KHK's products was wrongful.  KHK has now filed a counterclaim against Waco seeking money damages from Waco as compensation for alleged losses resulting from the wrongful seizure.

7

for wrongful seizure. Waco concedes the correctness of the court's instruction at the close of evidence that Waco would be liable for seizure if it sought the seizure order in bad faith or if the majority of the seized goods were non-infringing. Waco contends, however, that conflicting instructions confused the jury such that its finding of bad faith was predicated on the judge's comments that the seizure had already been deemed wrongful.

The ultimate determination as to whether the jury was confused so as to warrant reversal focuses on the jury charge "as a whole" The court in *Davis v. Avondale Indus., Inc.* articulated the standard for reviewing jury confusion in the context of a jury charge:

> On appeal, the charge must be considered as a whole, and so long as the jury is not misled, prejudiced, or confused, and the charge is comprehensive and fundamentally accurate, it will be deemed adequate and without reversible error. This Court will only reverse when the charge as a whole leaves us with a substantial and ineradicable doubt whether the jury has been properly guided in its deliberations.

975 F.2d 169, 174-75 (5th Cir. 1992) (citations omitted). There is no doubt that in this case the jury has been properly guided in its deliberations.

First, Waco mischaracterizes the judge's statements. The judge's comments took place during *voir dire*, before jurors had been selected. The judge made the comments in the context of informing the jury of the procedural history of the case, and was not, as Waco suggests, "instructing" the jury as to the elements of wrongful seizure claim. The court stated that the five-sentence "nutshell" explanation was cursory at best and stated that the potential jurors would "hear many more facts if you're selected to serve." It is unlikely that jurors who had not yet been selected would have identified the introductory remarks as somehow limiting their charge in the matter yet to be heard.

8

Second, if Waco believed that the statements made during *voir dire* conflicted with the proposed jury questions or were in any way confusing, it did not at any time object or ask for clarification. Waco participated in the proposed pre-trial order and the proposed jury questions attached therewith, in which both parties contemplated that the court ultimately might submit the issue of wrongful seizure to the jury. Although the court had not vacated the summary judgment ruling that the seizure was wrongful as a matter of law, both the Jury Charge and the Jury Questions clearly reflect that the issue of wrongful seizure liability was submitted to the jury. The Jury Charge described accurately and in detail the elements of wrongful seizure, the definitions involved, and the standard to be applied. The special Jury Questions reflect the mandate expressed in the Jury Charge. Moreover, the court prefaced its closing jury charge by stating, "[d]o not consider any statement I have made in the course of the trial or make in these instructions as an indication that I have any opinion about the facts of the case." There is no support for Waco's allegation that the jury somehow considered its fact-finding role as limited by or predicated on the judge's statements made during *voir dire* regarding the procedural history of the case. Viewing the instructions as a whole, we find the jury was not misled or confused.

**2. Standard for Wrongful Seizure Liability**

**a. Bad Faith**

Waco claims that the judge erred in "refusing" to apply *Martin's Herend Imports v. Diamond & Gem Trading*, 195 F.3d 765, 773 (5th Cir. 1999) ("*Martin's II*"), which, Waco argues, established a new standard for wrongful seizure liability. Although, as explained above, Waco conceded the correctness of the jury instructions, Waco incongruously asserts that under

9

*Martin's II*, the wrongful seizure claimant in all cases bears the burden of establishing that the applicant sought the order in "bad faith." Waco claims that "[i]n *Martin's II* this Court held that the wrongful seizure claimant has the burden of proof on all elements of its cause of action, that one element is 'bad faith' and that the element of bad faith is not established unless the wrongful seizure claimant pleads and proves that the plaintiff sought the seizure order knowing it was baseless." Waco Brief at 32.

Waco misreads the holding in *Martin's II*. Congress intentionally left the definition of "wrongful seizure" to "case-by-case interpretation." *See* Joint Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, at 12083 (Oct. 10, 1984). Congress did identify, however, several guidelines for determining whether a seizure was wrongful. Congress indicated that a seizure may be wrongful: (1) where an applicant acted in "bad faith" in seeking the order; *or* (2) if the goods seized are predominately legitimate merchandise, even if the plaintiff acted in good faith. *See* Senate Comm. on the Judiciary, S. Rep. No. 98-526, at 8 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3627, 3634. *Martin's II* does not hold otherwise.

After stating the above congressional guidelines, the *Martin's II* court noted that the plaintiff had sought summary judgment on the wrongful seizure counterclaim only on the bad faith issue and that "it did not seek summary judgment on whether any non-infringing merchandise was seized." *Id.* at 773. The court then stated that as its role was not to second-guess the granting of the seizure, the sole issue before it was whether the plaintiff acted in bad faith. *Id.* at 774. There is no support for the proposition that, in all cases, a wrongful seizure claimant must show bad faith.

**b. Factors for granting application for *ex parte* seizure**

10

Waco also asserts that the district court erred in improperly determining KHK's wrongful seizure counterclaim under sections 1116(d)(1) and (4), rather than under section 1116(d)(11). Waco is correct that 15 U.S.C. § 1116(d)(11) governs whether a seizure order is wrongful, rather than section 1116(d)(4), which merely set forth the factors a court is to consider in determining whether to grant an application for such an order. *Martin's II* specifically held that section 1116(d)(4) does not establish the elements of a wrongful seizure counterclaim. 195 F.3d at 775:

> The wrongful seizure provision of the Lanham Act is not in s. 1116(d)(4) but in section 1116(d)(11). Thus, section 1116(d)(11) and its supporting legislative history establish the standards by which wrongful seizure claims may be pursued, and section 1116(d)(4) has nothing to do with those standards.

There is no indication, however, that the district court decided KHK's motion for summary judgment under the wrong statutory provision. It is apparent that the district court referred to sections 1116(d)(1) and (d)(4) to indicate the authority under which the court granted the order. In fact, the district court specifically identified section 1116(d)(11) as the statutory provision under which it deemed the seizure wrongful:

> In seeking an *ex parte* seizure order, [Waco] assumed the risk imposed by section 1116(d)(11) that it would be liable for damages for a wrongful seizure if its position was not ultimately sustained upon completion of the adversarial process [i.e., the post-seizure hearings].

### c.  Use of a Mark

Waco claims error on the ground that the seizure was of "counterfeit goods" because the Waco mark was used on sales invoices issued "in connection with" the sale of KHK's scaffolding. Waco argues that the Lanham Act imposes liability for trademark counterfeiting on any person who shall, without the consent of the registrant, "use in commerce . . . any counterfeit . . . of a

11

registered mark *in connection with* the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . ." 15 U.S.C. § 1114(1)(a) (emphasis added). Waco's argument lacks merit.

First, that KHK may be *liable* under the Lanham Act for its representations in connection with the sale of its goods does not necessarily mean that the *seizure* was warranted. The *ex parte* seizure remedy must be narrowly construed, and is *not* coextensive with liability for any Lanham Act claim. *Martin's Herend Imports v. Diamond & Gem Trading*, 112 F. 3d 1296, 1306 (5th Cir. 1997) ("*Martin's I*") (importation of gray market goods, although held to constitute infringement, was not an act of counterfeiting and thus *ex parte* seizure applicant could be liable under section 1116(d)(11) for wrongful seizure). Thus, even if Waco ultimately had prevailed at trial on its trademark infringement claim, its application for *ex parte* seizure still could be found wrongful.

Second, the primary focus of an *ex parte* seizure order is on the goods themselves, rather than any business practice or representation that may give rise to liability for trademark infringement or unfair competition.[8]  In light of this purpose, Congress has stated that "a seizure

_____

[8] Congress's stated intent in enacting the *ex parte* seizure provision is as follows:

> The purpose of the *ex parte* seizure provision is to provide victims of trademark counterfeiting *with a means of ensuring that the courts are able to exercise their jurisdiction effectively in counterfeiting cases*. Testimony before both the House and the Senate Judiciary Committees established that many of those who deal in counterfeits make it a practice to destroy or transfer counterfeit merchandise when a day in court is on the horizon. The *ex parte* seizure procedure is intended to thwart this bad faith tactic, while ensuring ample procedural protections for persons against whom such orders are issued.

Joint Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, at

(continued...)

12

must be considered wrongful when the *material* to be seized is legitimate, non-infringing merchandise." 130 Cong. Rec. H-12076 (October 10, 1984) (emphasis added). Waco admits that the seized goods did not bear the Waco trademark. *See* Waco Brief at 7-8. Waco also admits that the KHK scaffolding bore both an imprint of its country of origin (U.A.E.) and a safety label with KHK's name and telephone number. *See id.* There is no support for the proposition that any unauthorized use of a mark not on the goods themselves precludes a finding that a seizure was sought wrongfully.

Even if use of the Waco mark "in connection with" the sale of unmarked goods could support a seizure order, the jury found that, as a factual matter, KHK did not "use a counterfeit of any of the listed Waco registered marks in connection with the sale, offering for sale, or distribution of goods or services." *See* Jury Question 4, RE1-3-5. We decline Waco's invitation to second-guess the jury's factual finding.[9]

---

[8](...continued)
12080 (Oct. 10, 1984) (emphasis added). This principle is embodied in section 1116(d)(4)(vii) (it must "clearly appear" from facts that "the person against whom seizure would be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person."). Thus, the purpose of the statute is to facilitate the preservation of evidence, and "[a] key element is that the plaintiff must show that defendant is likely to dispose of the counterfeit goods if notice were given." McCarthy, at 30:37.

[9] Waco also argues on appeal that the district court's ruling on summary judgment imposed a constitutionally impermissible construction on the wrongful seizure cause of action under the *Noerr Pennington* doctrine. *See Prof. Real Estate Investor's, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993) (under *Noerr Pennington* doctrine**,** an antitrust civil litigant cannot be constitutionally punished for bad faith or sham civil litigation unless the litigant's suit is objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits.). The *Noerr*

(continued...)

13

## B. Expert Testimony

Waco contends that the district court erred in allowing an expert witness, Mr. Gordon, to testify as to matters of law. Waco claims that this testimony "irreparably tainted the jury's consideration of the bad faith issues and caused incurable prejudice to Waco." We find that the district court did not abuse its discretion in allowing the testimony.

Although a lawyer may not testify as to purely legal matters, he or she may testify as to legal matters that involve questions of fact. The Court in *Askanase v. Fatjo*, upon which Waco relies, recognized that "[m]erely being a lawyer does not disqualify one as an expert witness. Lawyers may testify as to legal matters when those matters involve questions of fact." 130 F.3d 657, 672-73 (5th Cir. 1997) (citing *Huddleston v. Herman & MacLean*, 640 F.2d 534, 552 (5th Cir. Unit A March 1981), *aff'd in part*, *rev'd in part on other grounds*, 459 U.S. 375 (1983) (lawyer could testify that language in a boilerplate contract was standard because effect of language related to scienter).

Here, Mr. Gordon testified as to legal matters insofar as they related to questions of fact, e.g., issues an attorney typically investigates in determining whether to pursue an *ex parte* seizure order. At trial, counsel for Waco moved to strike a portion of Mr. Gordon's testimony on the grounds that he was being offered to testify as an expert on the law. The district court denied the motion, stating "in order for the jury to understand the standard of care as applies to a trademark

---

[9](...continued)

*Pennington* doctrine does not in any way provide a defense to a statutory wrongful seizure claim based on the meritoriousness of the underlying trademark infringement claim. Indeed, the merits of the underlying trademark infringement claim do *not* determine whether a seizure was sought wrongfully. The district court need not have vacated summary judgment on this ground or instructed the jury on the doctrine.

14

owner's conduct in seeking a seizure, the expert has to explain what the law is, because the standard of care is defined in part by the law." R237-919 to 920. As discussed above, the section 1116(d)(4) factors a court looks to in determining whether to grant a seizure order are not determinative of whether the seizure was in fact "wrongful" under section 1116(d)(11). Nevertheless, there is nothing in the statute that precludes the absence of a particular factor from supporting a finding that the petition was baseless and therefore brought in "bad faith." The district court clearly specified the purpose of Mr. Gordon's testimony, and properly indicated that the testimony as to legal issues was allowed because this standard necessarily involves what a reasonable lawyer needs to investigate and determine before seeking such an order.

Waco maintains, however, that Mr. Gordon misled the jury by testifying "that the law requires that an application for *ex parte* seizure be supported by an affidavit attesting to the counterfeit mark being on the goods or on containers for the goods, a bond that includes the word 'seizure' and an affidavit that the infringer is a 'fly-by-night' operator, and that failure to meet these requirements means the seizure was wrongful and in bad faith." Waco mischaracterizes Mr. Gordon's testimony.

Mr. Gordon's testimony centered on what an attorney must determine prior to seeking an *ex parte* seizure. Mr. Gordon did not specifically testify that, under the law, failure to meet any of these requirements meant that the seizure was wrongful, or necessarily constituted bad faith. In any event, to the extent that Waco believed that Mr. Gordon had mischaracterized the law, Waco had an opportunity to cross-examine this witness and the jury is presumed to weigh the testimony accordingly. The district court gave the jury an instruction that "[y]ou should consider each expert opinion received in evidence in this case, and give it such weight as you may think it

15

deserves." In addition, Waco participated in the drafting of the jury instructions regarding the applicable law, and could have sought a remedy for any of Mr. Gordon's alleged mischaracterizations of the law.

## C. Injunctive Relief

### 1. Likelihood of Confusion

Waco claims that the district court abused its discretion in refusing to grant injunctive relief "even after the jury returned its verdict finding that KHK infringed Waco's trademarks." Waco Brief at 46. Waco claims that because the jury found infringement, it necessarily found "likelihood of confusion," thereby necessitating a permanent injunction. Waco omits the fact that although the jury found that KHK infringed Waco's trademark, *see* Jury Question 1, R26-239-7735, the jury found that KHK had established the affirmative defense of "fair use."[10] *See* Jury Question 7, R26-239-7729.[11] There is no support for the proposition that where a defendant's use of a mark had been found to constitute "fair use," it is an abuse of discretion to deny an injunction relating to such use.

### 2. Fair Use Doctrine

Waco claims that the court issued an erroneous and misleading instruction that under the

---

[10] The court in *Sugar Busters, LLC v. Brennan*, 177 F.3d 258, 270-71 (5th Cir. 1999), held that "the fair-use defense allows a party to use a term in good faith to describe goods or services, but only in actions involving descriptive terms and only when the term is used in its descriptive sense rather than in its trademark sense."

[11] Reading the charges as a whole, it appears that the jury found that the mark was used without permission but only for comparative or reference purposes. *Compare* Jury Charge 5, R27-247-7900 *with* Jury Charge 10(c), R27-247-7892.

"fair use" doctrine, "[i]t is acceptable for competitors to use a competitor's trademarks for comparative or reference purposes." Waco relies on *Pebble Beach*, 155 F. 3d at 537, in which the court stated: "By definition, the defendant cannot use the [competitor's] mark to identify its goods because this would not be a nominative use, and it would also suggest affiliation, sponsorship, or endorsement." This statement of law is not inconsistent with the court's instruction, which is an accurate description of the "fair use" doctrine. "Fair use" is defined under 15 U.S.C. § 1115(b)(4) as "the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark . . . of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party." Clearly, use of a mark for comparison or reference purposes falls under the category "descriptive" as defined in section 1115(b)(4), rather than what *Pebble Beach* indicates as use for *identification* purposes. Thus, use of "Waco-style" is not identifying the good as a "Waco" good (i.e., use of the Waco mark "as a mark"), but rather *describes* the good as being similar to or compatible with Waco's products. The court's statement does not in any way imply that KHK was entitled to affix the Waco mark to its goods without an appropriate qualifier.[12] Waco also argues that the district court should not have allowed KHK even to assert the "fair use" doctrine on the ground that

_____

[12] Waco similarly contends that "by misapplying the fair use doctrine and submitting fair use in the terms it used, the district court effectively communicated to the jury that Waco's marks had come to describe a style of scaffolding and thus was generic. That instruction, in turn, effectively permitted KHK to assert genericness while it absolved KHK of the heavy burden of proof that the law requires to establish the genericness defense." Waco Brief at 58. That a mark could lawfully be used for "comparative or reference" purposes under the "fair use" doctrine says nothing about whether the mark is generic, and nothing in the court's instruction could be interpreted as extending the fair use doctrine to encompass genericness.

17

Waco's marks are registered and therefore "incontestible." Waco relies on *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 205 (1985), in which the Supreme Court stated that "the holder of a registered mark may rely on incontestability to enjoin infringement and such an action may not be defended on the grounds that the mark is merely descriptive." Clearly, the Supreme Court in *Park 'N Fly* was indicating that an owner of a registered trademark need not prove ownership (i.e., the validity of the mark is "incontestible"), which would only be at issue if the mark were unregistered. By extension, the Supreme Court reasoned that a defendant cannot assert that the *owner's* registered mark does not warrant protection on the ground that the mark lacks distinctiveness, a ground for refusing registration. *See In Re Sun Oil Co.*, 426 F.2d 401 (C.C.P.A. 1970). That a mark is registered does not preclude a defendant from asserting the "fair use" defense. Consequently, the jury was properly instructed as to the "fair use" doctrine.

**E. Whether KHK is "a person who suffers damage"**

Waco contends that because the jury found that KHK had not suffered "lost profit" or "loss of good will," KHK suffered no actual damages and therefore it is not "a person who suffers damage" as required by section 1116(d)(11) ("A person who suffers damage by reason of a wrongful seizure under this subsection has a cause of action against the applicant . . ."). Waco mischaracterizes a finding of lost profits and/or loss of good will as a statutory prerequisite for a wrongful seizure claim. McCarthy on Trademarks, at § 30:44 specifies that a claimant must prove as an element of a wrongful seizure claim that "Claimant was in fact damaged by reason of the seizure." McCarthy further explains that attorney fees are to be considered part of actual damage:

> One who proves damage from a wrongful seizure can recover all appropriate damages, including compensation for lost goods or materials, damage to good will

18

and business reputation, and *all other elements of actual damage, including a reasonable attorney fee*.

Id.

Even if actual damages are, as Waco suggests, limited to lost profits and/or loss of good will, the statute does not, as Waco insists, apply only to claimants who have suffered "actual damages" but to those who have suffered "damage," which can include costs and fees incurred in bringing the wrongful seizure counterclaim. According to the legislative history, "[t]he sponsors recognize that *ex parte* seizure orders are an extraordinary remedy, and that a person who is subject to a wrongful *ex parte* seizure should be *fully compensated* by the party who obtained the seizure order." 130 Cong. Rec., at H12082-83 (emphasis added). Thus, Congress apparently intended that wrongful seizure claimants be compensated for the attorney fees and costs expended in bringing the counterclaim, assuming the claimant prevails in establishing "bad faith" or that the goods were predominately legitimate. Failure to show lost profit or loss of good will does not necessarily preclude recovery of attorney's fees under the wrongful seizure statute.

## F. Attorney Fees

Under section 1116(d)(11), "unless the court finds extenuating circumstances, [a claimant is entitled] to recover a reasonable attorney's fee . . . ." Waco claims that such circumstances exist and that attorney fees must be denied. For example, Waco points to evidence that KHK was not awarded damages for lost profit or good will, that it produced "bogus" invoices in discovery, and that it altered business records. Waco Brief at 40. Even if such evidence could support a finding of "extenuating circumstances," there is no support for the proposition that the district court was under an affirmative obligation to make such a finding. The district court did not abuse

19

its discretion in allowing KHK to recover attorney fees.

## II. KHK's Cross Appeal

## A. Attorney Fees

As stated above, KHK was awarded $730,687 in attorney's fees. It appears from the Jury Questionnaire that the award was in fact limited to fees incurred in litigating KHK's counterclaim: Jury Question 12 ("Wrongful Seizure Compensatory Damages") asked the jurors "what sum of money, if any, . . . would fairly and reasonably compensate KHK for Waco's conduct in obtaining and executing the seizure of KHK's goods?" Under section 1117(a) of the Lanham Act, "the court in exceptional cases may award reasonable attorney fees to the prevailing party." KHK claims that the district court abused its discretion by not awarding the "remainder"of its attorney fees ($541,117) under section 1117(a) because this was an "exceptional case."

Courts have defined "exceptional cases" to be those in which "a plaintiff's case is groundless, unreasonable, vexatious, or pursued in bad faith." *Scott Fetzer Co. v. Williamson*, 101 F. 3d 549, 555 (8th Cir. 1996). KHK contends that because Waco's "case was baseless from the outset," it was pursued in bad faith. The district court did not, as KHK implies, rule that Waco's entire case was baseless or pursued in bad faith. Rather, the *seizure order* was found to be wrongful as a matter of law, and sought in bad faith, of which resulted in the award of attorney's fees. KHK admits that "less than twenty" invoices used the terms "Waco" or "Hi-Load" without a qualifier such as "style" or "compatible." KHK contends that the reference was a short-hand "cross-reference" to let customers know that the item they purchased "matched" Waco's scaffolding. KHK admits that "a few" quotation letters referred to its scaffolding as

20

"Waco scaffolding" without a qualifier but assert that it is "trade custom" to refer to standard scaffolding designs by the name of the manufacturer that first introduced the product. In light of these admissions, Waco may have had reason at least to suspect that KHK was infringing on its mark in some way or was engaging in potentially unfair competition. Waco's claim could not therefore be considered so entirely baseless that the district court abused its discretion in not finding the case to be "exceptional," and awarding additional damages.

## B. Pre-judgment Interest

In an order dated August 9, 2000, the district court denied KHK pre-judgment interest. KHK claims on appeal that the district court abused its discretion in not awarding pre-judgment interest. Under 15 U.S.C. § 1116(d)(11), the court "in its discretion may award pre-judgment interest on relief recovered under this paragraphs [at a rate set forth in the IRS code] . . . ." Nevertheless, KHK argues that "lengthy litigation" was necessary to defend against Waco's claims, thereby justifying the award of pre-judgment interest. There is no support for the proposition that two years of litigation is of such length that failure to award pre-judgment interest would constitute an abuse of discretion.

## CONCLUSION

Accordingly, we AFFIRM the final judgment, the award of attorney's fees, the order denying prejudgment interest, and the order denying a permanent injunction.

21