```
THIS OPINION
IS A PRECEDENT
OF THE TTAB
```

Date: April 17, 2007

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

In re Active Ankle Systems, Inc.

_____

Serial No. 78349181

_____

Scot A. Duvall of Middleton Reutlinger for Active Ankle
Systems, Inc.

Lana H. Pham, Trademark Examining Attorney, Law Office 115
(Tomas V. Vlcek, Managing Attorney).

_____

Before Hairston, Taylor and Bergsman, Administrative
Trademark Judges.

Opinion by Taylor, Administrative Trademark Judge:

On January 8, 2004, Active Ankle Systems, Inc. filed
an application to register on the Principal Register the
mark DORSAL NIGHT SPLINT for "orthopedic splints for the
foot and ankle."[1]  The examining attorney refused
registration on the ground that the mark is merely
descriptive under Section 2(e)(1) of the Trademark Act, 15

_____

[1] Application Serial No. 78349181, reciting a bona fide intention
to use the mark in commerce.  On November 2, 2004 applicant filed
an amendment to allege use, claiming March 15, 2004 as the date
of first use of the mark anywhere and in commerce.

**Ser No.** 78349181

U.S.C. §1052(e)(1). After filing an amendment to allege use, applicant amended its application to the Supplemental Register and the refusal under Section 2(e)(1) was withdrawn. In response to a request from the examining attorney, applicant disclaimed the term "NIGHT SPLINT." The examining attorney then refused registration, under Section 23 of the Trademark Act, 15 U.S.C. § 1091, on the ground that applicant's mark is generic and thus incapable of registration on the Supplemental Register.

When the refusal was made final, applicant appealed and requested reconsideration of the final refusal. On June 2, 2006, the examining attorney denied the request for reconsideration and the appeal was resumed. Applicant and the examining attorney have filed briefs and applicant has filed a reply brief.[2]

*Preliminary Matter*

Before turning to the merits of the case, we must address a dispute between the examining attorney and applicant concerning the governing case law by which we will be guided in determining genericness. Throughout the

---

[2] Applicant attached Exhibits 1-11 to its reply brief, filed November 20, 2006. While certain of the exhibits are Internet printouts previously submitted by applicant during prosecution, other exhibits are newly submitted. The newly submitted material will not be considered. The record should be complete prior to appeal. Trademark Rule 2.142(d), 37 C.F.R. § 2.142(d).

examination of the application, the examining attorney took the position that the applied-for-mark is a compound word, and thus the determination of genericness should be guided by *In re Gould Paper Corp.*, 834 F.2d 1017, 5 USPQ2d 1110 (Fed. Cir. 1987) and *In re Leatherman Tool Group, Inc*., 32 USPQ2d 1443 (TTAB 1994). In her appeal brief, the examining attorney added the alternative rationale that, even if the applied-for-mark is considered a phrase, it is generic under *In re American Fertility Society*, 188 F.3d 1341, 51 USPQ2d 1832 (Fed. Cir. 1999).

Applicant, on the other hand, has taken the position throughout the case that the applied-for-mark is a phrase and thus the determination of genericness should be guided by *American Fertility*. Applicant accordingly contends that the only means by which the Board may find the designation DORSAL NIGHT SPLINT to be generic is if the evidence of record clearly establishes that the entire phrase is generic.

We agree with applicant that the designation DORSAL NIGHT SPLINT is a phrase. Therefore, the examining attorney's reliance on *Gould* and *Leatherman* is misplaced. In the present case, "dorsal," "night," and "splint" are multiple words joined together as a phrase. Thus, in

reaching our decision, we have been guided by *American Fertility, supra*.

However, as a result of this dispute, applicant requested that the Board augment the panel assigned to this case and expressly overrule *Leatherman*. Applicant contends that in view of the Federal Circuit's 1999 decision in *American Fertility*, and the examining attorney's reliance on the 1994 decision in *Leatherman* to support the refusal, *Leatherman* should be expressly overruled to the extent that it permits the *Gould* "dissection/recombination" analysis in the context of multi-word marks.[3] The Board has considered the request but has determined that a panel of judges larger in number than the usual three-member panel is not warranted. *See generally*, TBMP § 540 (2d ed. rev. 2004). Applicant's request for an augmented panel is accordingly denied. We further comment that an examining attorney's reliance on a Board decision that is not or may no longer be good law does not require an express overruling of that decision. Examining attorneys and parties before the Board occasionally cite inapposite or outdated cases. The Board, being thoroughly familiar with current case law, will apply the correct case law, which, in this case, is *American Fertility*.

---

[3] *Leatherman*, 32 USPQ2d at 1449.

We turn then to the merits of the case and review the evidence.

**The Evidence**

*a. The Examining Attorney's evidence*

To demonstrate that the designation "dorsal night splint" is generic, the examining attorney submitted two excerpts from the NEXIS database shown below (emphasis supplied):

> Brown Medical Industries introduces the new PF Convertible Splint[TM]. This orthosis is a removable walking splint with a **dorsal night splint** component. Designed specifically for plantar fasciitis... (<u>Podiatry Management</u>, August 1, 2005; and

> I have found a cheap and quick alternative to a **dorsal night splint** for plantar facia pain and/or foot cramping. (<u>Physician and Sportsmedicine</u>, January, 2002).

The examining attorney also submitted printouts from Internet websites found through a search of the "Google" search engine. The first three excerpts are from the web site PodiatryNetwork.com (http://podiatrynetwork.com), the relevant portions of which are set forth below (emphasis supplied):

> The **dorsal night splint** is a new revolutionary treatment modality for several foot and ankle disorders, I highly recommend it to my patients.

> Dr. Kirk Koepsel, Houston, TX.
> The **dorsal night splint** is effective in the treatment of several common foot and ankle

disorders including but not limited to heel pain, plantar fasciitis ….

A night splint can't be effective unless a patient wears it.  Now there's a brace so comfortable you will use it.  The A-Force **Dorsal Night Splint** has been designed to hold the foot in a neutral position during sleep ….

… Recently a new design for the night splint has been offered.  It is called the **dorsal night splint** produced by Active Ankle Systems, Inc. … Combined with proper and adequate calf muscle stretching the **dorsal night splint** is an effective and cost effective means of treating an array of foot and ankle disorders.

Additional printouts from other websites

include, in relevant part:

**FREEDOM Dorsal Night Splint**:  The FREEDOM Dorsal PF Night Splint helps heal plantar fasciitis in comfort.  This low-profile splint cradles the foot in [a] neutral position, gently stretching the plantar fascia through the night to relieve heel pain. (www.buyusa.gov),

*Alimed* **Dorsal Night Splint**.  Holds foot comfortably in [a] neutral position while patient sleeps ….(www.medco-athletics.com),

They all work, but the A-Force **dorsal night splint** is the best overall in terms of ease of use, comfort, and durability.  The Strassburg sock is second best overall.(www.drnelsonclinic.com),

The Royce Medical Airform Night Splint is an effective treatment for achilles tendonitis, plantar fascitis [sic], and drop foot injuries.  The **dorsal night splint** treats the problem differently than braces or supports by applying a mild

6

passive stretch to the Achilles tendon and
plantar fascia to keep it in a lengthened
state much like during a stretch.
(www.dme-direct.com); and

The company makes six versions of the
Active Ankle product, along with other
products like a new **dorsal night splint** for
people with plantar fasciitis, a painful
heel inflammation.
(www.courier-journal.com).

The examining attorney also introduced a printout from

applicant's web site, (http://www.activeankle.com),

the relevant portion is:

Dorsal Night Splint$^{TM}$

Active Ankle's Dorsal Night Splint$^{TM}$ has
been designed to hold the foot in a neutral
position during sleep ….

The examining attorney also introduced Internet

evidence of web pages that were obtained as a result of a

search of the Google search engine of the terms "dorsal

splints foot" presumably to show that dorsal splints are

used in connection with the foot.  The following are

representative samples:

Ankle Fracture Reference List

Post-operative management of ankle fractures:

... Active ankle movement with weight
bearing in an orthosis was compared with
active ankle movement without weight bearing
using a dorsal splint.
(http://home.gwu.edu);

7

Foot Talk Forums

Hi Kris and welcome.

... Honestly, I don't think that you'll see all that much improvement with the dorsal splints. (www.myfootshop.com); and

Chronic Achilles Tendon Overuse Injury Complications After Surgical Treatment American Journal of Sports Medicine, Jan, 2000

Postoperative Regimen

... In the cases of partial Achilles tendon rupture or tendinosis (cases where excision of the tendon tissue was extensive), the limb was immobilized with a dorsal splint for two weeks with the ankle joint in slight plantar flexion. (www.findarticles.com).

To show that the term "dorsal" is used generically, the examining attorney submitted Internet evidence showing that the term "dorsal" is used in connection with the foot and ankle. The following is a representative sample:

Virtual Naval Hospital™

Orthopedics

III. Ankle and Foot

Physical Examination:

6. Dorsal Refers to the top of the foot.

(www.vnh.org)

The examining attorney submitted definitions from the American Heritage Dictionary of the English Language (3d ed. 1992) of "dorsal," "night" and "splint."

Dorsal is defined, in relevant part, as:

8

1. Anatomy. Of, toward, on, in or near the back or upper surface of an organ, a part, or an organism.

Night is defined, in relevant part, as:

1. a. The period between sunset and sunrise, especially the hours of darkness.
2. The period between bedtime and morning.
3. Intended for use at night.

Splint is defined, in relevant part, as:

1. A rigid device used to prevent motion of a joint or of the ends of a fractured bone.

### b. Applicant's evidence

Applicant has submitted copies of four registrations as evidence that the term "night splint" and not "dorsal night splint" has been used in the identification of goods for orthopedic products.

### Analysis

To be registrable on the Supplemental Register, the matter sought to be registered must be "capable of distinguishing applicant's goods or services." Trademark Act §§ 23(a), 23(c). "Generic terms are common names that the relevant purchasing public understands primarily as describing the genus of goods or services being sold. They are by definition incapable of indicating a particular source of the goods or services." *In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341, 57 USPQ2d 1807, 1810 (Fed. Cir. 2001)(citations omitted). Because they are incapable

of indicating a particular source, generic terms are not registrable on the Supplemental Register.

Our primary reviewing court has set forth a two-step inquiry to determine whether a mark is generic:  First, what is the genus (category or class) of goods or services at issue?  Second, is the term sought to be registered understood by the relevant public primarily to refer to that genus (category or class) of goods or services?  H. *Marvin Ginn Corp. v. International Association of Fire Chiefs, Inc.,* 782 F. 2d 987, 989, 228 USPQ 528, 530 (Fed. Cir. 1986).  As stated in *American Fertility*, 51 USPQ2d at 1837, "[t]he correct legal test" for genericness "is set forth in *Marvin Ginn*" and "is to be applied to a mark … as a whole, for the whole may be greater than the sum of its parts."  The burden of proving genericness falls on the trademark examining attorney, who must present "clear evidence of generic use."  *See In re Merrill Lynch, Pierce, Fenner, and Smith, Inc.*, 828 F.2d 1567, 1571, 4 USPQ2d 1141, 1143 (Fed. Cir. 1987).  "Any competent source suffices to show the relevant purchasing public's understanding of a contested term, including purchaser testimony, consumer surveys, dictionary definitions, trade journals, newspapers and other publications."  *In re Dial-A-Mattress Operating Corp., supra*, 57 USPQ2d at 1810.

10

With respect to the first part of the *Marvin Ginn* inquiry, applicant defines the class of goods as "orthopedic splints for the foot and ankle to be worn while sleeping," and the examining attorney, in her brief, acknowledges that this is the appropriate class of goods. We agree that applicant's definition is sufficiently definite to serve as the identification of the genus of applicant's goods for purposes of our genericness analysis in this case.

Next, we must determine the relevant public for applicant's goods. Contrary to applicant's assertion that the relevant public for its goods consists only of medical doctors, and in particular, podiatrists, we find the relevant public also includes the general public. While physicians/podiatrists may recommend the use of applicant's product to their patients, and even assuming that applicant's orthopedic splints may only be obtained from a physician/podiatrist, the general public is still the ultimate consumer and, thus, included in the relevant public. Moreover, the evidence of record shows that applicant's orthopedic splints sold under the designation DORSAL NIGHT SPLINT are available for purchase by the general public via the Internet at (www.alimed.com) and (www.drnelsonclinic.com).

We next must determine whether the relevant public understands DORSAL NIGHT SPLINT to refer to the genus of goods at issue. *See H. Marvin Ginn, supra.* We note, first, that the dictionary definition of "dorsal" quoted previously is "… [o]f, toward, on, in or near the back of the upper surface of an organ." We find this definition applies to and names the part of the foot and ankle on which applicant's orthopedic splints are worn. Indeed, the Internet evidence shows that "dorsal" is also used to refer to the upper surface area of the foot. Therefore, "dorsal" is a generic term for applicant's type of orthopedic splint, or any other orthopedic splint that would be used on that surface of the foot.

We also note that the previously quoted dictionary definition of "night" includes "[i]ntended for use at night." We find this definition directly applies to the "worn while sleeping" aspect of applicant's goods and is, therefore, generic for applicant's type of orthopedic splint.

Further, we note that the previously quoted dictionary definition of "splint" is "[a] rigid device used to prevent motion of a joint or of the ends of a fractured bone." We find this word names applicant's goods.

Moreover, during the prosecution of the application, applicant admitted that the term "NIGHT SPLINT" is generic in relation to its goods. (Applicant's Request for Reconsideration at p. 16).

In addition to finding that each of the words DORSAL, NIGHT and SPLINT and the term NIGHT SPLINT are generic as applied to the genus of goods at issue, we also find, as we must under *American Fertility*, *supra*, that the phrase DORSAL NIGHT SPLINT, as a whole, is generic for the goods. The two Nexis excerpts and the eight Internet excerpts previously quoted show that orthopedic splints for the foot and ankle worn while sleeping are referred to generically as "dorsal night splints." Contrary to applicant's assertion, we find the quoted excerpts sufficient to establish that the phrase DORSAL NIGHT SPLINT, as a whole, is generic for applicant's orthopedic splints for the foot and ankle worn while sleeping.

Applicant has failed to introduce evidence to rebut the examining attorney's evidence of genericness. Instead, applicant merely argues that when each item of evidence is viewed in context, they do not establish genericness. We disagree.

Applicant argues that several of the cited references to "Dorsal Night Splint" refer to applicant's product.

13

While that may be true, the designation DORSAL NIGHT SPLINT primarily has been used in those excerpts in a generic manner to identify applicant's type of goods and not the source of such goods.  Further, where one could arguably point to a mixed use of DORSAL NIGHT SPLINT (i.e., the second excerpt from podiatrynetwork.com; and the excerpts from drnelsonclinic.com, medco-athletics.com and applicant's website), the designation appears with other source indicating matter, e.g., "A-Force," "Alimed," and "Active Ankle."  As such, the relevant public will not readily perceive DORSAL NIGHT SPLINT, in and of itself, as source indicating, and is more likely to rely on the other matter as indicating source.

We also are not persuaded that the evidence is somehow lacking because only one medical professional used the designation in a generic manner without a direct reference to applicant.  As indicated earlier in this decision, the relevant public includes the general public.  *See In re American Institute of Certified Public Accountants*, 65 USPQ2d 1972 (TTAB 2003) (The term "CPA Examination" held generic notwithstanding that some members of the relevant public appeared to associate the term with applicant.).  Further, while applicant asserts that the other reference by a medical professional was in regard to applicant's

14

goods, there is no actual reference in the excerpt to applicant and the designation DORSAL NIGHT SPLINT was used by that professional in a generic manner.

Moreover, the evidence shows that three of applicant's competitors use the designation "dorsal night splint" in a generic manner.

The manner in which the designation DORSAL NIGHT SPLINT appears on the specimens of record bolsters our finding that the designation is not capable of identifying the source of applicant's products. In particular, we note that the applied-for-mark is used on the product inserts as follows:



In the phrase, "Tips for getting the greatest benefits from your new Dorsal Night Splint," "Dorsal Night Splint" is used as the generic name of the product. Further, because the letters "DNS" appear above DORSAL NIGHT SPLINT in a larger typeface and with an integral design of a crescent moon and star, the letters "DNS" would be perceived as

15

indicating the source of applicant's dorsal night splints.[4] This is so despite applicant's use of the barely noticeable "TM" symbol in connection with the second use of DORSAL NIGHT SPLINT.[5]

Similarly, as noted above, the record shows that applicant's goods are sold under the designation "A-Force Dorsal Night Splint," with the term "A-Force" prominently displayed on the splints themselves. Such usage by applicant diminishes any possible source-identifying significance of the designation DORSAL NIGHT SPLINT.

In this case, the evidence of record establishes the genericness of DORSAL NIGHT SPLINT as applied to applicant's orthopedic splints for use on the foot and ankle. Even if applicant was the first and/or sole user of a generic term or phrase, as it claims, that does not entitle applicant to register such a term or phrase as a mark. See *In re National Shooting Sports Foundation, Inc.*, 219 USPQ 1019 (TTAB 1983). Moreover, while other terms such as "Night Splint," "Plantar Fasciitis Night Splint,"

---

[4] We hasten to add that we are not making a ruling as to whether the letters "DNS" are, or are not, generic for applicant's products.

[5] The presence of the letters "TM" cannot transform an otherwise unregistrable designation into a mark. *In re Remington Products Inc.*, 3 USPQ2d 1714 (TTAB 1714); *In re Anchor Hocking Corp.*, 223 USPQ 85 (TTAB 1985); and *In re Minnetonka, Inc.*, 212 USPQ 772 (TTAB 1981).

"Night Passive Splint," and "Night Foot Splint" may be used to identify applicant's type of product, it is well settled that there can be more than one term to name a product. *Roselux Chemical Co., Inc. v. Parsons Ammonia Co., Inc.*, 299 F.2d 855, 132 USPQ 627, 632 (CCPA 1962). *See also*: *In re Sun Oil Co.*, 426 F.2d 401, 165 USPQ 718, 719 (CCPA 1970)(Rich, J., concurring)["*All* of the generic names for a product belong in the public domain."](emphasis in original).

We therefore find that the designation DORSAL NIGHT SPLINT is generic and incapable of distinguishing applicant's goods, and that it therefore is not registrable on the Supplemental Register.

**Decision:** The refusal of registration on the Supplemental Register is affirmed.